[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hedenberg v. N. Cent. Corr. Complex*, Slip Opinion No. 2020-Ohio-3815.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-3815

THE STATE EX REL. HEDENBERG, *v*. NORTH CENTRAL CORRECTIONAL COMPLEX ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Hedenberg v. N. Cent. Corr. Complex*, Slip Opinion No. 2020-Ohio-3815.]

*Public records—R.C. 149.43—Mandamus—Statutory damages—Writ of mandamus will not issue when uncontroverted evidence shows requested documents do not exist—Use of prison kite to request public records does not qualify requester for award of statutory damages—Writ of mandamus and request for statutory damages denied.*

(No. 2018-1117—Submitted January 7, 2020—Decided July 28, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

**{¶ 1}** Relator, Jonathan Hedenberg, seeks a writ of mandamus to compel the production of public records.  We deny the writ because the evidence establishes

that respondents, the North Central Correctional Complex, Warden Neil Turner, Deputy Warden Becky Joyce, "Mr. Potter," "Mr. Minchaka," and "Management Training Corp.,"[1] ("NCCC"), do not possess documents responsive to Hedenberg's public-records requests. In addition, we deny Hedenberg's request for an award of statutory damages and court costs.

## I. Background

{¶ 2} Hedenberg was an inmate at NCCC at the time that he filed his public-records requests.[2] On March 21, 2018, he sent a public-records request to Joyce for "records, sign up sheets, for the word processors and lexis nexis from a time period of Nov. 12th, 2015 to Feb. 8th, 2016." Just over a week later, he made a second request for the sign-up sheets, this time addressed to Turner.

{¶ 3} On May 9, 2018, Hedenberg sent a request to Potter, again requesting the word-processor and LexisNexis sign-up sheets. And on that same date, he also sent a request to Mr. Minchaka in the "I.T." department. In the request to Minchaka, in addition to asking for the sign-up sheets, Hedenberg requested "any logs, e-mails, maintenance requests, or other related documents, that pertain to the printer/copiers contained in the Special Services Building" that had been created in late January or February 2016, including "any document that may show when the printers broke."

{¶ 4} In August 2018, Hedenberg filed his complaint for a writ of mandamus. He alleged that "Ms. McKenna," a former NCCC librarian, had given him a copy of a Ricoh work order, but that he had not been provided any other documents he sought. In addition to NCCC, his complaint named as a respondent Attorney General Mike DeWine. We granted the Attorney General's motion to

---

1. Management and Training Corporation is a private company that operates NCCC.

2. Hedenberg has since been transferred to another institution.

2

dismiss, dismissed him as a respondent, and sua sponte granted an alternative writ and set a briefing schedule.

**{¶ 5}** Pursuant to that order, the parties filed evidence and Hedenberg filed a merit brief with a supplement titled "Declaratory Statement under 28 U.S.C. 1746." When NCCC filed its brief, it captioned it as both a merit brief and a motion to dismiss. We denied NCCC's motion to dismiss and ordered NCCC to provide to this court under seal "the documents requested by relator in his complaint."

**{¶ 6}** In response, NCCC filed an affidavit from Robyn Boden, the finance manager at NCCC, in which Boden attests that NCCC does not have documents responsive to Hedenberg's requests. Hedenberg did not respond to that filing, nor did he file a reply brief.

## II. Analysis

**{¶ 7}** Mandamus is the appropriate remedy by which to compel compliance with Ohio's Public Records Act, R.C. 149.43. *State ex rel. Physicians Commt. for Responsible Medicine v. Ohio State Univ. Bd. of Trustees*, 108 Ohio St.3d 288, 2006-Ohio-903, 843 N.E.2d 174, ¶ 6. However, a writ of mandamus will not issue when the uncontroverted evidence shows that the requested documents do not exist. *State ex rel. Lanham v. Smith*, 112 Ohio St.3d 527, 2007-Ohio-609, 861 N.E.2d 530, ¶ 15.

**{¶ 8}** In its initial evidentiary filing, NCCC submitted an affidavit from Turner in which he attests that "NCCC does not save or maintain sign-in sheets for word processor use available for inmates in the NCCC library or Lexis sign-up sheets in the NCCC library." He further attests that "[i]nmates may have been requested to sign in before using the word processors and Lexis to establish the order of inmate usage, however, any such sign-in sheets were discarded and not saved or maintained." In conclusion, Turner attests that "no requested sign in sheets were retained. NCCC does not have in its possession the records requested by Relator, and therefore, cannot produce any."

**{¶ 9}** To refute Turner's claims, Hedenberg submitted as part of his merit brief a document that he titled "Declaratory Statement Under 28 U.S.C. 1746." Hedenberg purported to sign the document under penalty of perjury, but the document is not notarized. NCCC argues that Hedenberg's unsworn declaration is invalid and should not be considered as substantive evidence. We need not address this contention, however, because even if we were to consider Hedenberg's unsworn declaration as evidence, it fails to refute Turner's evidence that the LexisNexis sign-up sheets do not exist. In the declaration that Hedenberg filed as part of his brief, Hedenberg asserts that the NCCC library "is still maintaining a complete copy of 2017 logs" for LexisNexis sign-ups. But his requests had sought records from 2015 and 2016, so this assertion does not further his claim. With respect to the older records, Hedenberg states that "Ms. Weidner," who he describes as a former librarian at NCCC, maintained several years of LexisNexis sign-up sheets. Hedenberg also states that

> [u]pon Ms. McKenna's termination of employment, Mr. Cedar and Mr. Smith took guardianship of the NCCI library, and removed documents from the library and office, *either storing or disposing of these documents*. Any documents they stored were alleged to be stored in a storage space off the library. The documents I seek in my complaint were part of the above described documents in question.

(Emphasis added.) Hedenberg concedes that Potter had searched the storage areas and did not find the documents. Thus, Hedenberg offers little evidence that the documents still exist.

**{¶ 10}** Hedenberg also requested "any logs, e-mails, maintenance requests, or other related documents, that pertain to the printer/copiers contained in the

Special Services Building" that had been created in late-January or February 2016, including "any document that may show when the printers broke." But Boden attests in her affidavit that "NCCC does not have any service records and/or work orders for the subject Ricoh printer for the time period referenced." According to Boden, when service is required, NCCC makes a service request by telephone and maintains no records of such requests.

{¶ 11} Hedenberg did not respond to the Boden affidavit. And his declaration sheds little light on whether the printer-maintenance records he seeks exist. He states that

> (vi) The Ricoh copier is serviced by an external contractor, a Ricoh Store, and there have been two separate contractors while the Relator was housed at NCCI.
>
> I have already been provided a copy of the Ricoh Stores workorder, but it does not help to identify the date of the Ricoh's breakdown; it provides the date the Ricoh workorder was created and an estimated date of completion described on the form as the date of the completion.

Nothing in Hedenberg's declaration supports his contention that additional documents remain to be produced, or that a document exists that shows "the date of the Ricoh's breakdown."

{¶ 12} For these reasons, Hedenberg's evidence that NCCC has documents responsive to his requests is unpersuasive. We therefore deny his request for a writ of mandamus.

{¶ 13} In his complaint, Hedenberg requested an award of statutory damages and court costs. Court costs may be awarded in a public-records case in two circumstances. First, an award of court costs is mandatory when the court

grants a writ of mandamus compelling a public office to comply with its duties under the Public Records Act. R.C. 149.43(C)(3)(a)(i). Second, court costs shall be awarded when the court determines that the public office "acted in bad faith when [it] made the public records available to the relator for the first time after the relator commenced the mandamus action, but before the court issued any order concluding whether or not" to grant a writ of mandamus. *See* R.C. 149.43(C)(3)(a)(ii) and (iii). Neither scenario applies to the facts of this case, and therefore Hedenberg is not entitled to an award of court costs.

{¶ 14} Nor is Hedenberg eligible for an award of statutory damages. Statutory damages are available only if Hedenberg proves by clear and convincing evidence that he had delivered his request "by hand delivery, electronic submission, or certified mail." R.C. 149.43(C)(2); *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 9. Hedenberg concedes that he delivered his requests through the prison "kite" system. "A 'kite' is written by an inmate to a member of the prison staff and is 'a means for inmates to contact staff members inside [an] institution.' " *Greene* at ¶ 3, fn. 1, quoting *State v. Elmore*, 5th Dist. Richland No. 16CA52, 2017-Ohio-1472, ¶ 15. The use of a prison kite to request public records does not qualify the requester for an award of statutory damages. *State ex rel. McDougald v. Greene*, ___ Ohio St.3d ___, 2020-Ohio-3686, ___ N.E.3d ___, ¶ 18.

{¶ 15} For these reasons, we deny Hedenberg's request for a writ of mandamus and deny his request for an award of statutory damages and court costs.

Writ denied.

O'CONNOR, C.J., and FRENCH, FISCHER, DEWINE, and STEWART, JJ., concur.

DONNELLY, J., concurs in judgment only.

KENNEDY, J., concurs in part and dissents in part, with an opinion.

_____

**KENNEDY, J., concurring in part and dissenting in part.**

{¶ 16} I concur in the majority's judgment denying a writ of mandamus regarding one of the public-records requests filed by relator, Jonathan Hedenberg, namely the request for word-processor and LexisNexis sign-up sheets from respondents North Central Correctional Complex, certain of its officials, and the private company that operates the complex ("NCCC"). I dissent, however, from the majority's judgment regarding Hedenberg's request for records concerning a printer at the facility that had been out of service. Hedenberg's first documented request for information about the printer was dated March 21, 2018. It was not until NCCC filed an affidavit on October 1, 2019, in response to this court's order to submit to it any responsive documents for in camera review, that NCCC informed Hedenberg that no responsive documents existed. For over 18 months, NCCC led Hedenberg—and at times, this court—to believe that NCCC had responsive documents but that NCCC had no duty to produce them for Hedenberg. Because of its delay and shifting excuses regarding the records relating to the printer in question, NCCC failed to meet its responsibilities under R.C. 149.43(B), and I would therefore award Hedenberg statutory damages.

{¶ 17} Hedenberg first requested information about the printer from Deputy Warden Becky Joyce on March 21, 2018: "[O]n or around Feb. 8th the printer/copier broke in the library. I need to know if there is any email or record, other than the work order that can demonstrate exactly when it broke." NCCC's response to Hedenberg's request came on March 27, 2018, when Joyce wrote to Hedenberg, "I am not permitted to pull the records."

{¶ 18} On March 30, 2018, Hedenberg sent a request to Warden Neil Turner again asking for the records:

On or about Feb. 8th of 2016 the library printer/copier broke. I know it broke some time before Feb. 8 but, the Ricoh work order I have was requested Feb 8th. I also know it was repaired Feb. 9th. Could you please look through the email from this time and attempt to find out the specific day it broke. I need this for the court because the printer breaking caused me to be late in filing.

* * *

P.S. Dept. W. Joyce stated she is unable to "pull the records," hence this letter.

Turner responded, "We are unable to provide you with the information requested."

{¶ 19} On May 9, 2018, Hedenberg sent a request to Mr. Minchaka in the "I.T." department. He wrote,

[T]he documents I seek are from February of 2016 or late January. The printer in the law library and another in special services was out of service at this time. I need any document that may show when the printers broke. I know the library computer was serviced Feb 8th, I have a copy of the Ricoh work order.

{¶ 20} Minchaka responded that Hedenberg needed to seek assistance from Hedenberg's unit staff.

{¶ 21} Hedenberg filed the present mandamus action in this court on August 7, 2018. None of the named respondents affiliated with NCCC filed an answer. After some delay that was not the fault of the parties, this court granted an alternative writ on April 26, 2019. NCCC filed a merit brief and motion to dismiss on June 21, 2019. In support of NCCC's argument that this court should deny the writ, NCCC submitted an affidavit from Turner in which he stated, "Relator

8

requested work orders and related communications for the NCCC printers and copiers. For security reasons, NCCC does not provide work orders and related documents to inmates or the public that are classified as infrastructure records or that relate to the computer systems at NCCC."

{¶ 22} NCCC argues in its merit brief that any records regarding the broken printer are infrastructure records under R.C. 149.433 and are therefore exempt from disclosure. R.C. 149.433(A) defines "infrastructure record" as "any record that discloses the configuration of critical systems including, but not limited to, communication, computer, electrical, mechanical, ventilation, water, and plumbing systems, security codes, or the infrastructure or structural configuration of a building." R.C. 149.433(B)(2) states that "[a] record kept by a public office that is an infrastructure record of a public office, public school, or a chartered nonpublic school is not a public record under section 149.43 of the Revised Code and is not subject to mandatory release or disclosure under that section." NCCC argues that the records Hedenberg seeks regarding the printer relate to the infrastructure of the prison's computer systems and are therefore statutorily exempt from disclosure.

{¶ 23} This court denied NCCC's motion to dismiss and ordered it, within ten days, to provide to this court for in camera review the documents requested by Hedenberg in his complaint. On October 1, 2019, NCCC filed a response to that order, stating that there are no responsive records. NCCC supports that statement with an affidavit from its finance manager, Robyn Boden, in which Boden states that NCCC does not maintain records of service calls made to Ricoh, the printer's manufacturer. She testifies, "No records are left with NCCC related to these service calls as they are covered under the service agreement between [the company that operates NCCC] and Ricoh."

{¶ 24} Finally, after over 18 months of NCCC's non-responsive responses, Hedenberg's request for records culminated in NCCC's filing of an affidavit that explained that the facility has no documents responsive to the request for records

regarding the printer. And only after this court ordered NCCC to produce the records for in camera review did NCCC directly address Hedenberg's request.

{¶ 25} Hedenberg requests statutory damages. We apply the version of R.C. 149.43[3] that was in effect at the time that he made his records requests. *State ex rel. Kesterson v. Kent State Univ.*, 156 Ohio St.3d 13, 2018-Ohio-5108, 123 N.E.3d 887, ¶ 11, fn. 1. R.C. 149.43(C)(2) provides for statutory damages of $100 per business day, up to $1,000, if a court determines that the public office "failed to comply with an obligation in accordance with division (B) of this section." When a public office receives a public-records request it is obligated to promptly provide any responsive records within a reasonable amount of time. And when it denies a records request, it must inform the requester of that denial and provide the reasons for the denial. R.C. 149.43(B)(1) and (3); *State ex rel. Cordell v. Paden*, 156 Ohio St.3d 394, 2019-Ohio-1216, 128 N.E.3d 179, ¶ 11.

{¶ 26} As this court noted in *Cordell*, even if the public office has no responsive records to produce, its failure to respond in a timely manner with its reasons for its failure to produce the requested records makes it liable for statutory damages. Whether the public office complied with its statutory duty to respond within a reasonable period of time "depends upon all of the pertinent facts and circumstances." *Cordell* at ¶ 12, quoting *State ex rel. Morgan v. Strickland*, 121 Ohio St.3d 600, 2009-Ohio-1901, 906 N.E.2d 1105, ¶ 10. The requester "bears the burden of demonstrating that the [public office's] response to [the] public-records requests was unreasonably delayed." *Id.* at ¶ 12, citing *State ex rel. Dispatch Printing Co. v. Johnson*, 106 Ohio St.3d 160, 2005-Ohio-4384, 833 N.E.2d 274, ¶ 44.

{¶ 27} Following several requests to NCCC and its officials, Hedenberg received no substantive response as to why NCCC could not produce records

---

3. Hedenberg's complaint is governed by former R.C. 149.43, 2016 Sub.H.B. No. 71. All references to R.C. 149.43 refer to that version unless otherwise noted.

regarding the out-of-service printer. The warden and deputy warden merely responded that they were unable or not permitted to provide the records. Even in its brief to this court, NCCC claims that the records are infrastructure records. But a record concerning the status of one printer does not constitute an infrastructure record; an infrastructure record is instead "any record that discloses the configuration of critical systems." R.C. 149.433(A). What Hedenberg sought had nothing to do with the configuration of a critical system.

{¶ 28} Hedenberg meets his burden of proving that respondents' response regarding the out-of-service printer was unreasonably delayed. Still, Hedenberg is not entitled to statutory damages unless he made his records request "by hand delivery or certified mail." R.C. 149.43(C)(2). "Hand delivery" is not defined in the statute. There is no dispute in this case that Hedenberg made his requests through the prison "kite" system. "A 'kite' is written by an inmate to a member of the prison staff and is 'a means for inmates to contact staff members inside [an] institution.' " *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 3, fn. 1, quoting *State v. Elmore*, 5th Dist. Richland No. 16CA52, 2017-Ohio-1472, ¶ 15. Because I would hold that requesting public records by kite constitutes hand delivery, *see State ex rel. McDougald v. Greene*, ___ Ohio St.3d ___, 2020-Ohio-3686, ___ N.E.3d ___, ¶ 60 (Kennedy, J., dissenting), I would also hold that Hedenberg is eligible to receive statutory damages under R.C. 149.43(C)(2).

{¶ 29} Statutory damages are calculated at the rate of $100 for every business day that the public office or person responsible for the requested public records failed to comply with an obligation under R.C. 149.43(B), starting from the date on which the requester filed his or her mandamus complaint, with a maximum award of $1,000. R.C. 149.43(C)(2). Hedenberg filed his mandamus complaint on August 7, 2018, yet he could not have learned that NCCC lacked any responsive

records until NCCC informed this court of that fact nearly 14 months later on October 1, 2019, so he is eligible for the maximum amount of statutory damages.

{¶ 30} A court may decline to award statutory damages or reduce the amount of the award if it finds that based on the public-records law that existed at the time of the alleged conduct that constituted the failure to comply with R.C. 149.43 "a well-informed public office or person responsible for the requested public records * * * reasonably would believe that the conduct * * * did not constitute a failure to comply * * * with [R.C. 149.43(B)]," R.C. 149.43(C)(2)(a), and also that "a well-informed public office or person responsible for the requested public records reasonably would believe that the conduct * * * would serve the public policy that underlies the authority that is asserted as permitting that conduct," R.C. 149.43(C)(2)(b). Neither of the reduction factors apply in this case. Hedenberg sought only the service records for a specific printer covering a specific period of time, which could not reasonably be considered to be infrastructure records if they existed. Therefore, I would hold that Hedenberg is entitled to an award of $1,000 in statutory damages.

{¶ 31} In accordance with our duty to uphold the law as it is written, I would determine that NCCC is liable for statutory damages for its failure to fully comply with R.C. 149.43(B)(1) and (3) and to provide Hedenberg a timely response outlining the reasons for its denial of his request for records relating to the out-of-service printer. But the majority seems content to let NCCC and its employees flout the law.

{¶ 32} Although Hedenberg is an incarcerated individual, he has the same right as any other person to access certain public records documenting disclosable prison procedures. Therefore, I would award Hedenberg statutory damages in the amount of $1,000. Because the majority determines differently, I dissent.

_____

Jonathan Hedenberg, pro se.

Mansour Gavin, L.P.A., Michael P. Quinlan, and Kenneth E. Smith, for respondents.

————————————