[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. WTOL Television, L.L.C. v. Cedar Fair, L.P.*, Slip Opinion No. 2023-Ohio-4593.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-4593

THE STATE EX REL. WTOL TELEVISION, L.L.C., ET AL. *v.* CEDAR FAIR, L.P., D.B.A. CEDAR FAIR ENTERTAINMENT COMPANY, ET AL.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. WTOL Television, L.L.C. v. Cedar Fair, L.P.*, Slip Opinion No. 2023-Ohio-4593.]

*Mandamus—Public-records requests—Police department that provides security, policing, and law-enforcement services at amusement park acts as functional equivalent of a public institution and therefore must respond to valid public-records requests related to those duties—Respondents failed to meet their burden to show that requested documents, to the extent they exist, are exempt from disclosure—Writ compelling production of certain requested documents granted—Statutory damages and attorney fees denied and court costs awarded.*

(No. 2022-0914—Submitted September 12, 2023—Decided December 20, 2023.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} Relators, WTOL Television, L.L.C., WKYC-TV, L.L.C., and WBNS-TV, Inc., filed this original action in mandamus seeking a writ to compel respondents, Cedar Fair, L.P., d.b.a. Cedar Fair Entertainment Company, and Ronald E. Gilson, to provide documents in response to three public-records requests. We grant a writ ordering Cedar Fair and Gilson to produce some, but not all, of the requested documents. We also grant relators' request for an award of court costs but deny their requests for awards of statutory damages and attorney fees.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Background

{¶ 2} Cedar Fair operates amusement parks across the country, including Cedar Point in Sandusky. The Cedar Point Police Department ("CPPD") provides security, policing, and law-enforcement services at Cedar Point. Gilson is the director of security at Cedar Point and the chief of police of the CPPD.

{¶ 3} Relators are media companies that broadcast news in Ohio. In August 2021, a guest at Cedar Point was allegedly injured near the Top Thrill Dragster ride and WKYC sent a public-records request to the CPPD asking for records related to the incident. Meanwhile, relators had been investigating sexual assaults that allegedly occurred at Cedar Point employee housing beginning in April 2017. In March and June 2022, WTOL and WBNS sent public-records requests to the CPPD asking for records related to the alleged assaults. Relators allege that they have not received any of the requested records.

{¶ 4} Relators filed this mandamus action in July 2022. They seek a writ of mandamus ordering Cedar Fair and Gilson to produce the requested records, and they also seek statutory damages, court costs, and attorney fees. In their answer to the complaint, Cedar Fair and Gilson denied that the CPPD is an entity that is required to respond to public-records requests. They also stated that they did not

have any responsive documents and that even if they did, the records are exempt from disclosure as confidential law-enforcement investigatory records and privileged private-security documents.

{¶ 5} We issued an alternative writ and ordered the parties to brief and submit evidence "on whether the Public Records Act, R.C. 149.43, applies to respondents." 168 Ohio St.3d 1450, 2022-Ohio-3903, 198 N.E.3d 106. Relators submitted evidence; Cedar Point and Gilson did not submit any evidence. We subsequently issued an order directing the parties "to brief and submit evidence on whether the records requested by relators—assuming that the Public Records Act applies to respondents—are public records, whether the court should issue a writ of mandamus ordering their production, and whether the court should award statutory damages, court costs, and attorney fees." 170 Ohio St.3d 1425, 2023-Ohio-1635, 209 N.E.3d 707. The order noted that Cedar Fair and Gilson were permitted to submit documents they believed are privileged or constitute confidential law-enforcement investigatory records under seal for in camera inspection. Neither party submitted additional evidence, and Cedar Fair and Gilson did not file any documents under seal.

### B. WKYC's public-records request

{¶ 6} On August 18, 2021, WKYC emailed a request to the CPPD, seeking "[a]ll incident and investigative reports from the Cedar Point Police and associated Emergency Medical Services personnel regarding an incident Sunday, Aug. 15, 2021, at Cedar Point Park—specifically an injury sustained by a female guest near the Top Thrill Dragster ride." In addition, WKYC requested witness statements, investigative notes, recordings and video of the incident, and any other documents stemming from the incident. WKYC emailed the request to the CPPD's general email address and copied two other Cedar Point contacts. On August 19, WKYC forwarded the request to Gilson and Tony Clark, another Cedar Point employee. Clark responded later that day, stating, "Assuming Cedar Point is required to

provide such documents, we have no documents responsive to your public records request." Clark later offered to connect Cedar Point's legal counsel with WKYC. But Cedar Fair and Gilson never provided the requested documents or any further response.

### C. WTOL's public-records request

{¶ 7} On March 23 2022, WTOL emailed a public-records request to Gilson, seeking "[c]opies of all reports of sexual misconduct filed with, and maintained by, the Cedar Point Police Department from April 1, 2017 to March 22, 2022." In addition, WTOL requested "copies and/or recordings of any witness or suspect statements, oral or written; investigative notes; recommendations of charges, and photos and/or videos associated with the reports provided." Gilson responded by email on March 25, acknowledging receipt of the request and indicating that it had been forwarded to legal counsel for an opinion as to whether the Public Records Act applies to Cedar Point. Gilson wrote:

> If Cedar Point is required to respond to the request *and* there are documents responsive to the request—we will provide the documents within a reasonable time (30 days). If our counsel believes that we are not required under Ohio law to respond, our legal counsel will provide you with the basis for Cedar Point not responding.

(Emphasis sic.)

{¶ 8} WTOL sent a follow-up email to Gilson on March 25 and a follow-up letter on April 15, seeking compliance with the request. Cedar Fair and Gilson have not communicated with WTOL since Gilson's initial email message and have not provided any documents to WTOL.

**D. WBNS's public-records request**

{¶ 9} On June 2, 2022, WBNS emailed a request to Gilson for "[c]opies of all reports of sexual misconduct filed with, and maintained by, the Cedar Point Police Department from April 1, 2017 to March 22, 2022." WBNS also requested "copies and/or recordings of any witness or suspect statements, oral or written; investigative notes; recommendations of charges, and photos and/or videos associated with the reports provided." On June 6, 9, and 22 and July 18, WBNS sent follow-up emails to Gilson asking about the request. Cedar Fair and Gilson have not produced any documents to WBNS or provided any response to the request.

**E. Evidence regarding the CPPD**

{¶ 10} A Sandusky ordinance provides that the city manager shall appoint private police officers when requested by a person or business in Sandusky. Sandusky Codified Ordinances 127.04(a). The private police officers are paid for by the person or business requesting them. Sandusky Codified Ordinances 127.04(c). They "shall have the same powers and be subject to the same regulations as other police officers" and "shall perform such police duties at such place or places within the City limits as the person, firm, or corporation requesting their appointment may direct; however, such duties shall not be contrary to or inconsistent with the laws or the City ordinances." Sandusky Codified Ordinances 127.04(b). Private police officers in Sandusky must be qualified as Ohio peace officers by the Ohio Peace Officer Training Commission. Sandusky Codified Ordinances 127.04(d).

{¶ 11} In 2014, Sandusky and Cedar Fair entered into an agreement for the appointment of private police pursuant to Sandusky Codified Ordinances 127.04. Each officer must be qualified to serve as a law-enforcement officer in Ohio or must obtain such qualification within one year of appointment. Cedar Fair pays for the

officers' salary, equipment, and training, and it fully indemnifies the city for any liabilities incurred by the officers.

{¶ 12} The agreement states that the city manager "shall appoint and maintain in service at the pleasure of the said City Manager such private police officers as may be reasonably necessary to provide law enforcement services and police protection in an [sic] about the property owned and/or utilized by Cedar [Fair]." However, the agreement's provision that the private police officers serve at the pleasure of the city manager contradicts a Sandusky ordinance stating that private police officers serve at the "pleasure of the person, firm, or corporation requesting his appointment," Sandusky Codified Ordinances 127.04(c). It is not clear from the record whether CPPD officers actually serve at the pleasure of the city manager or of Cedar Fair.

{¶ 13} Pursuant to this agreement, the city manager has commissioned members of the CPPD. Cedar Point police officers swear an oath before the city manager to support the laws of the United States, Ohio, and Sandusky and are commissioned as private police officers for the city. The Ohio Peace Officer Training Commission lists "Sandusky Police/Cedar Point Division" as a police agency. On social media, the Sandusky Police Department referred to Cedar Point police officers as "bonded officers, with full law enforcement authority."

{¶ 14} The evidence submitted by relators shows that Cedar Point police officers have the power to arrest and investigate claims and that on occasion, they exercise these powers. The CPPD has taken witness statements and submitted police incident reports to the Sandusky Police Department. One of these reports, for a sexual assault, states that a CPPD officer served as the approving officer. In at least one civil forfeiture action, the CPPD was the plaintiff acting under the name CPPD and identified itself in a court filing as a law-enforcement agency. In response to a public-records request, a Sandusky assistant city manager stated in an email that "Sandusky officers generally handle many of the felony type crimes and

[Cedar Point] officers handle most of the misdemeanor type of crimes." He also stated that "[a]ny arrests made by Cedar Point is [sic] handled in Sandusky Municipal Court."

{¶ 15} In addition, Cedar Fair and Gilson recognize that at the time of relators' public-records requests, the CPPD was performing policing duties in addition to providing security. In June 2022—several months after WKYC and WTOL made their public-records requests—Sandusky and Cedar Point issued a joint press release. The release stated that Cedar Point was evaluating its security operation and that Cedar Point and Sandusky would be "entering into a new partnership":

> [T]he policing authorities of the Cedar Point Police Department will be fully transitioned into the Sandusky Police Department's operation, and the Cedar Point Police Department will focus solely on *security* operations at Cedar Point and its local affiliated properties. Conversely, the Sandusky Police Department will assume all *policing* responsibilities for Cedar Point and its affiliated properties.

(Emphasis sic.) The release states that the transition was expected to be complete in 2023.

{¶ 16} It is not clear from the record how the CPPD was created. Relators argue that Sandusky created the CPPD in that Sandusky's ordinances state that private police officers "shall constitute members of the private police force of the City," Sandusky Codified Ordinances 127.04(a), and Sandusky appointed officers to perform law-enforcement services at Cedar Point. But nothing in either Sandusky's ordinances or the agreement between Sandusky and Cedar Fair creates, or authorizes the creation of, a private police *department*. Cedar Fair and Gilson

state in their brief that the CPPD "was created by Cedar Fair, a private, for-profit limited liability partnership, for the purpose of providing security services to Cedar Fair," but it has not timely submitted any evidence in support of this assertion.

## II. LEGAL ANALYSIS

### A. Legal standards

{¶ 17} Mandamus is an appropriate remedy to compel compliance with the Public Records Act. R.C. 149.43(C)(1)(b). To be entitled to a writ of mandamus, relators must establish a clear legal right to the requested relief and a clear legal duty on the part of Cedar Fair and Gilson to provide it. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. Unlike in other mandamus cases, "[the] [r]elators in public-records cases need not establish the lack of an adequate remedy in the ordinary course of law." *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v. Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.

### B. Evidentiary issues

{¶ 18} We issued an alternative writ and ordered the parties to submit evidence by November 29, 2022. 168 Ohio St.3d 1450, 2022-Ohio-3903, 198 N.E.3d 106. Cedar Fair and Gilson did not submit any evidence by that date. Instead, they attached two affidavits to their merit brief: one from Cedar Fair's former general counsel and one from Gilson.

{¶ 19} Relators argue that we should not consider these affidavits. We agree. S.Ct.Prac.R. 16.02(B)(5) limits what documents may be attached to a merit brief filed in this court. The rule does not allow litigants to attach affidavits—or any other type of evidence—to a merit brief. Thus, we will not rely on either untimely affidavit. *See State ex rel. Gil-Llamas v. Hardin*, 164 Ohio St.3d 364, 2021-Ohio-1508, 172 N.E.3d 998, ¶ 14. Even if we were inclined to rely on these affidavits, they are of limited probative value, having been created for different litigation predating the instant case.

### C. The case is not moot

{¶ 20} In the final paragraph of their brief, Cedar Fair and Gilson state that they have provided relators with the requested documents and that the issues before this court are moot. This assertion is not supported by any evidence. Relators agree that Cedar Fair and Gilson have provided some requested documents, but relators contend that Cedar Fair and Gilson may not have provided all requested documents. We will not deny a writ petition seeking public records based solely on an unsupported assertion by the respondent that it has already produced the responsive records. *See State ex rel. Cincinnati Enquirer v. Dupuis*, 98 Ohio St.3d 126, 2002-Ohio-7041, 781 N.E.2d 163, ¶ 9. And even if all responsive records had already been produced, such a production would not moot relators' requests for attorney fees, costs, or statutory damages. *State ex rel. Martin v. Greene*, 156 Ohio St.3d 482, 2019-Ohio-1827, 129 N.E.3d 419, ¶ 7-8 (court costs and statutory damages); *State ex rel. Cincinnati Enquirer v. Ronan*, 124 Ohio St.3d 17, 2009-Ohio-5947, 918 N.E.2d 515, ¶ 10 (attorney fees). The case is not moot.

### D. The Cedar Point Police Department is required to respond to public-records requests

{¶ 21} A threshold issue in this case is whether the CPPD is required to respond to public-records requests. The Public Records Act requires "public office[s]" or "person[s] responsible for public records" to provide public records in response to requests. R.C. 149.43(B). " 'Public office' includes any state agency, public institution, political subdivision, or other organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government." R.C. 149.011(A). Gilson and Cedar Fair, a private, for-profit company, deny that the CPPD is a public office required to produce public records. Relators assert two arguments in support of their position that the CPPD is required to respond to public-records requests.

*1. The Cedar Point Police Department was not established pursuant to city and state law to serve a core government function*

**{¶ 22}** Relators first argue that the CPPD is subject to the Public Records Act because it was established by the city's and the state's enabling laws "to perform a core function of government: the exercise of plenary police power by sworn, state-certified police officers." Citing this court's precedent in *State ex rel. Schiffbauer v. Banaszak*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, ¶ 14, relators contend that the CPPD is thus a public office required to respond to valid public-records requests. We do not agree.

**{¶ 23}** In *Schiffbauer*, we held that Otterbein University's police department was a public office for purposes of the Public Records Act. *Id.* at ¶ 2. Otterbein is a private university that established a campus police department pursuant to R.C. 1713.50(B). R.C. 1713.50(B) provides that "[t]he board of trustees of a private college or university may establish a campus police department and appoint members of the campus police department to act as police officers." Campus police officers are vested by statute with the same powers and authority that are vested in police officers of a municipal corporation or county sheriffs. *Id.* at ¶ 8, citing R.C. 1713.50(C). We held in *Schiffbauer* that Otterbein's police department was "an entity 'established by the laws of this state' because it exist[ed] only through R.C. 1713.50." *Id.* at ¶ 9, quoting R.C. 149.011(A). "[B]ecause its officers are sworn, state-certified police officers who exercise plenary police power," we held, "the Otterbein police department is a public office." *Id.* at ¶ 2.

**{¶ 24}** Here, the characteristics of the CPPD officers are similar to those of Otterbein's police officers. Cedar Point's police officers are sworn, state-certified police officers. They must complete training approved by the Ohio Peace Officer Training Commission. Pursuant to city ordinance, they "shall have the same powers and be subject to the same regulations as other police officers." Sandusky Codified Ordinances 127.04(b). Under this authority, they exercise plenary police

10

powers, including the powers to arrest, issue warrants, and enforce criminal laws within their jurisdiction, and they cooperate with the Sandusky Police Department in doing so. In addition, they are even more closely connected to Sandusky than Otterbein's police officers were to state or municipal authorities: Cedar Point's police officers are appointed by the city manager, and pursuant to Sandusky's ordinances, they "constitute members of the private police force of the City," Sandusky Codified Ordinances 127.04(a); in contrast, Otterbein's police officers were appointed by Otterbein's board of trustees. *See Schiffbauer* at ¶ 7; *see also* R.C. 1713.50(B).

{¶ 25} The CPPD exercises a core function of government. However, it is not an "organized body, office, agency, institution, or entity established by the laws of this state for the exercise of any function of government," R.C. 149.011(A). Otterbein's police department was created pursuant to a state statute authorizing private universities to " 'establish a campus police department.' " *Schiffbauer*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, at ¶ 7, quoting R.C. 1713.50(B). In contrast, nothing in either Sandusky's ordinances or the agreement between Sandusky and Cedar Fair creates, or authorizes the creation of, a private police department. Sandusky's ordinances require the city manager to appoint private police officers at the request of a person or business in Sandusky. Sandusky Codified Ordinances 127.04(a). The agreement between Sandusky and Cedar Fair states that the city manager shall appoint private police officers as are reasonably necessary to provide law-enforcement services and police protection on Cedar Point property. Neither the ordinance nor the agreement creates a department—or any organization at all.

{¶ 26} The record does not clearly show how the CPPD was created, but there is no evidence indicating that it was "established by the laws of this state for the exercise of any function of government," R.C. 149.011(A). The mere fact that it now performs a function of government does not mean that the CPPD was

established by law to do so. Therefore, we reject relators' first asserted basis for arguing that the CPPD is required to respond to public-records requests.

*2. The Cedar Point Police Department is subject to the Public Records Act as the functional equivalent of a public institution*

**{¶ 27}** As an alternative basis for its position that the CPPD is required to respond to public-records requests, relators argue that the CPPD is the functional equivalent of a public institution for purposes of the Public Records Act under the test established by this court in *State ex rel. Oriana House*, *Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193. We agree with this argument.

**{¶ 28}** In *Oriana House*, we held that although private entities generally are not subject to the Public Records Act, a private entity is subject to the act if there is "a showing by clear and convincing evidence that the private entity is the functional equivalent of a public office." *Id.* at paragraph one of the syllabus. When determining whether a private entity is the equivalent of a public office for purposes of the Public Records Act, a court must analyze all relevant factors, including (1) whether the entity performs a government function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the act. *Id.* at paragraph two of the syllabus. Applying the test "requires a case-by-case analysis, examining all pertinent factors with no single factor being dispositive." *Id.* at ¶ 23. A private entity is subject to the Public Records Act only by a showing of clear and convincing evidence that the private entity is the functional equivalent of a public office. *Id*. at ¶ 26.

**{¶ 29}** Here, regarding the first factor, the CPPD performs a government function. Its officers provide law-enforcement services and police protection on Cedar Point property. Enforcement of criminal laws is a core government function. *Schiffbauer*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, at ¶ 14.

Therefore, the first factor weighs strongly in favor of the CPPD being subject to the Public Records Act.

{¶ 30} As for the second factor, the CPPD receives little or no government funding. Cedar Fair pays the salaries and benefits of the CPPD's officers and also pays for related expenses such as training, equipment, insurance, workers' compensation, and unemployment compensation. Sandusky may incur some limited costs related to the CPPD, but the second factor weighs in favor of our concluding that the CPPD is not subject to the Public Records Act.

{¶ 31} The third factor is the extent of government involvement or regulation regarding the entity. The city regulates and is involved with the CPPD. Cedar Point police officers are subject to the "same regulations as other police officers." Sandusky Codified Ordinances 127.04(b). They are sworn, state-certified peace officers who undergo the same certification as other peace officers. Sandusky Codified Ordinances 127.04(d). They are appointed by the city manager. And the CPPD works closely with the Sandusky Police Department when investigating crimes and performing other law-enforcement duties. Accordingly, the third factor points in favor of the CPPD being subject to the Public Records Act.

{¶ 32} The fourth factor is whether the entity was created by the government or to avoid the requirements of the Public Records Act. The record is unclear regarding how the CPPD was created. Its officers are appointed by the city pursuant to an agreement with Cedar Fair, but there is no evidence indicating that the department itself was created by the government. There is also no evidence that the department was created to avoid the requirements of the Public Records Act. Therefore, the fourth factor weighs in favor of our concluding that the CPPD is not subject to the Public Records Act.

{¶ 33} Weighing these factors, we conclude that the CPPD is the functional equivalent of a public institution. At the time of the public-records requests, the CPPD was serving as the police department for the employees and guests of Cedar

Point. It does much more than just provide security for Cedar Point. Enforcing criminal laws is a core government function. *Schiffbauer*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, at ¶ 14. Although *Schiffbauer* is not directly analogous, our observation in that case that organizations made up of "sworn, state-certified police officers who exercise plenary police power" exercise "one of the most fundamental functions of government," *id.* at ¶ 2, 13, supports the conclusion that on the facts presented here, the CPPD serves as the functional equivalent of a public office in regard to its police duties. When it performs these duties, the CPPD acts as the functional equivalent of a public institution and must respond to valid public-records requests related to those duties.

{¶ 34} We recognize that Ohio law has long allowed private entities to hire private police officers. *See, e.g.*, R.C. 4973.17 (allowing banks, railroads, hospitals, and other entities to request government appointment of private police officers)[1]; *see also New York*, *Chicago & St. Louis Ry. Co. v. Fieback*, 87 Ohio St. 254, 100 N.E. 889 (1912), paragraph one of the syllabus. These private police officers are generally not considered peace officers. *See State ex rel. Craig v. Scioto Cty. Bd. of Elections*, 117 Ohio St.3d 158, 2008-Ohio-706, 882 N.E.2d 435, ¶ 22, quoting *State v. Sinclair*, 5th Dist. Delaware No. 04CAA11073, 2005-Ohio-4497, ¶ 12 (" 'Ohio law distinguishes between private police officers such as security guards and private detectives, and peace officers employed by governmental entities' "). This opinion should not be read as implying that all private entities who employ private police officers are required to respond to public-records requests regarding the activities of such officers. However, based on a thorough review of the record evidence regarding the structure and activities of the CPPD, we conclude that at the

---

1. R.C. 4973.17(E), as amended by 2005 Sub.H.B. No. 58, also allows large amusement parks to request that a municipal-court or county-court judge appoint private police officers for it. The pleadings do not allege, and the record does not show, that Cedar Fair made a request to a judge for the appointment of private police officers pursuant to this statute. Rather, the pleadings and record refer to R.C. 737.05 and the Sandusky ordinance as the basis for the appointment of CPPD officers.

time of relators' public-records requests, the CPPD was acting as the functional equivalent of a public institution for purposes of the Public Records Act.

### E.  Writ of mandamus

{¶ 35} Having determined that the CPPD is required to respond to valid public-records requests, we next address whether relators are entitled to a writ of mandamus ordering Cedar Fair and Gilson to produce records responsive to relators' particular requests.

{¶ 36} Upon request, a person responsible for public records must promptly make the requested public records available.  R.C. 149.43(B)(1).  Relators sent public-records requests to Cedar Fair and Gilson.  Cedar Fair and Gilson first asserted in their answer that they did not have documents responsive to relators' requests, but they have not filed any evidence supporting this assertion.  Moreover, relators produced copies of incident reports they had received from the Sandusky Police Department that appear to have originally been created by the CPPD, suggesting that the CPPD likely possesses responsive documents.  In addition, after the filing of the complaint, Cedar Fair and Gilson produced some documents— including sexual-assault incident reports—in response to the requests, suggesting that they possess at least some responsive documents.  The *only* relevant evidence in the record therefore tends to show that Cedar Fair and Gilson do have records responsive to relators' requests.  In other words, this is not a case in which we should deny relief because the evidence is "evenly balanced," *State ex rel. Ware v. Giavasis*, 163 Ohio St.3d 359, 2020-Ohio-5453, 170 N.E.3d 359, ¶ 32.

{¶ 37} Initially, Cedar Fair and Gilson also asserted that the requested records are protected from disclosure because they are privileged or confidential law-enforcement investigatory records, *see* R.C. 149.43(A)(1)(h).  This assertion is unavailing.

{¶ 38} A records custodian bears the burden " 'to plead and prove facts clearly establishing the applicability of the [exception].' " (Brackets sic.)  *State ex*

*rel. Myers v. Meyers*, 169 Ohio St.3d 536, 2022-Ohio-1915, 207 N.E.3d 579, ¶ 30, quoting *Welsh-Huggins v. Jefferson Cty. Prosecutor's Office*, 163 Ohio St.3d 337, 2020-Ohio-5371, 170 N.E.3d 768, ¶ 27. Exceptions to public-disclosure requirements are strictly construed against the record custodian, and the custodian must prove that the requested records fall squarely within the exception. *Id.*

{¶ 39} Here, Cedar Fair and Gilson asserted as affirmative defenses that they are not required to release privileged records or confidential law-enforcement investigatory records. But they have not offered any argument explaining how any record requested by relators meets the requirements for either of these exceptions to apply. Nor have they submitted any documents for in camera inspection. Thus, Cedar Fair and Gilson have not met their burden to show that these documents, to the extent that they exist, are exempt from disclosure. *See State ex rel. Ware v. Parikh*, __ Ohio St.3d __, 2023-Ohio-759, __ N.E.3d __, ¶ 12 (concluding that the respondent had not met his burden to show the applicability of an exception when he had failed to "meaningfully analyz[e]" whether the exception applied).

{¶ 40} Thus, we order Cedar Fair and Gilson to produce any records responsive to relators' requests that they possess and have not already produced. Specifically, Cedar Fair and Gilson must produce copies of reports of sexual misconduct filed with the CPPD between April 1, 2017, and March 22, 2022, and associated "copies and/or recordings of any witness or suspect statements, oral or written; investigative notes; recommendations of charges, and photos and/or videos associated with the reports provided." They must also produce copies of "[a]ll incident and investigative reports from the Cedar Point Police [Department]" related to the Top Thrill Dragster incident that allegedly occurred on August 15, 2021.

{¶ 41} However, we do not order the production of incident or investigative reports created by emergency-medical-services ("EMS") personnel or related to EMS services. WKYC requested, among other things, incident reports and related

16

records created by EMS personnel during the alleged Top Thrill Dragster incident. EMS services are not police services, and there is no evidence in the record indicating that the CPPD provides EMS services or employs EMS personnel. To the extent that Cedar Fair provided EMS services related to the alleged Top Thrill Dragster incident, relators have produced no evidence showing that these services were provided through the CPPD.

### F. Court costs, statutory damages, and attorney fees

{¶ 42} Finally, we turn to relators' requests for court costs, statutory damages, and attorney fees. We award court costs but deny statutory damages and attorney fees.

### 1. Court costs

{¶ 43} An award of court costs is mandatory when "the court orders the public office or the person responsible for [a] public record to comply with" R.C. 149.43(B). R.C. 149.43(C)(3)(a)(i); *accord State ex rel. Hedenberg v. N. Cent. Corr. Complex*, 162 Ohio St.3d 85, 2020-Ohio-3815, 164 N.E.3d 358, ¶ 13. Because we grant a writ ordering Cedar Fair and Gilson to produce responsive documents, we also award relators their court costs.

### 2. Statutory damages

{¶ 44} Statutory damages shall be awarded if a public-records requester transmitted a written request by hand delivery, electronic submission, or certified mail and the public office or person responsible for the records failed to comply with any of its obligations under R.C. 149.43(B). R.C. 149.43(C)(2). All of the relators submitted their requests by email. Statutory damages are set at $100 for each business day the public office failed to comply with its obligations, starting with the day the requester filed the mandamus action, with a maximum award of $1,000. *Id.* Here, relators filed their mandamus action on July 26, 2022, so the full amount of $1,000 could be awarded to each relator.

**{¶ 45}** A court may reduce or not award statutory damages, however, if it determines both that (1) based on the law as it existed at the time of the request, a well-informed person responsible for the requested public records would have reasonably believed that R.C. 149.43(B) did not require their disclosure and (2) a well-informed person responsible for the requested public records would have reasonably believed that withholding the records would serve the public policy that underlies the authority asserted for withholding the records. R.C. 149.43(C)(2)(a) and (b).

**{¶ 46}** Although we conclude that the CPPD is the functional equivalent of a public institution under *Oriana House*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, two of the four parts of the functional-equivalence test weigh in favor of Cedar Fair and Gilson. *See supra* at Part II(D)(2). A well-informed person could have reasonably believed that Cedar Point is not the equivalent of a public institution subject to the act. *See State ex rel. Harm Reduction Ohio v. OneOhio Recovery Found.*, 172 Ohio St.3d 149, 2023-Ohio-1547, 221 N.E.3d 835, ¶ 38 (denying statutory damages after determining that a well-informed person responsible for a private entity's records could have reasonably believed that private entity was not subject to Public Records Act); *see also State ex rel. Fair Housing Opportunities of Northwest Ohio v. Ohio Fair Plan*, ___ Ohio St.3d ___, 2023-Ohio-2667, ___ N.E.3d ___, ¶ 34 (denying statutory damages in case deciding question of first impression regarding whether entity was a public office for purposes of Public Records Act). We therefore decline to award statutory damages.

*3. Attorney fees*

**{¶ 47}** A court may award attorney fees to a relator if the court orders the respondent to comply with its obligations under the Public Records Act. R.C. 149.43(C)(3)(b). An award of such attorney fees is discretionary. *State ex rel. Hicks v. Fraley*, 166 Ohio St.3d 141, 2021-Ohio-2724, 184 N.E.3d 13, ¶ 26.

However, the court shall not award attorney fees if the court determines that (1) based on the law as it existed at the time, a well-informed person responsible for the requested public records would have reasonably believed that R.C. 149.43(B) did not require their disclosure and (2) a well-informed person responsible for the requested public records would have reasonably believed that withholding the records would serve the public policy that underlies the authority asserted for withholding the records. R.C. 149.43(C)(3)(c)(i) and (ii). These are the same reasons why a court may reduce or not award statutory damages.

{¶ 48} For the same reasons that we deny statutory damages, we also deny attorney fees. *See Harm Reduction Ohio* at ¶ 41.

### III. CONCLUSION

{¶ 49} For the foregoing reasons, we issue a writ of mandamus compelling Cedar Fair and Gilson to produce all unproduced records responsive to relators' public-records requests except for records created by EMS personnel or related to EMS services. We grant relators' request for an award of court costs. And we deny relators' requests for awards of statutory damages and attorney fees.

Writ granted.

FISCHER, DeWINE, DONNELLY, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., concurs in part and dissents in part, with an opinion joined by STEWART, J.

————————

**KENNEDY, C.J., concurring in part and dissenting in part.**

{¶ 50} I concur in the majority opinion to the extent that it concludes that the Cedar Point Police Department ("the Department") is the functional equivalent of a public office and therefore is subject to the Public Records Act, R.C. 149.43. I also concur in the majority's judgment granting a writ of mandamus ordering respondents, Cedar Fair, L.P., d.b.a. Cedar Fair Entertainment Company, and Ronald Gilson, to produce certain documents requested by relators, WTOL

Television, L.L.C, WKYC-TV, L.L.C., and WBNS-TV, Inc., and to grant relators' request for an award of court costs.

{¶ 51} I part ways with the majority, however, in its denial of awards of statutory damages and attorney fees to relators. Based on the law existing at the time of relators' requests, a well-informed person responsible for the requested public records would have reasonably believed that respondents had an obligation under the Public Records Act to produce the requested records. Therefore, relators are entitled to statutory damages and this court should award attorney fees.

## I. Relevant Evidence Regarding the Cedar Point Police Department

{¶ 52} The majority paints a suitable picture of the facts and evidence in this case. I highlight the following aspects about the Department because they are relevant to determining whether this court must award statutory damages and should award attorney fees.

{¶ 53} The Sandusky City Manager, a government official, appoints and maintains the Department's police officers. These officers contractually serve at the pleasure of the city manager. These officers also must be qualified to serve as law-enforcement officers in Ohio, pursuant to both a Sandusky ordinance and the agreement between Sandusky and Cedar Fair, and they swear an oath before the city manager to uphold the laws of Sandusky, the state of Ohio, and the United States. Further, the Ohio Peace Officer Training Commission lists "Sandusky Police/Cedar Point Division" as a police agency.

{¶ 54} The Department also has, and exercises, police powers. For example, the Department has taken witness statements, submitted police incident reports to the Sandusky Police Department, identified itself in court filings as a law-enforcement agency, handled misdemeanor crimes, and handled arrests in cases that are prosecuted in the Sandusky Municipal Court. Even respondents admit that the Department was performing policing duties at the time of relators' records requests.

## II. Statutory Damages and Attorney Fees in Public Records Act Cases

{¶ 55} If a court determines that a public office or a person responsible for public records fails to comply with any of their obligations under R.C. 149.43(B), an aggrieved requester who sent a request electronically is entitled to statutory damages. R.C. 149.43(C)(2). In these situations, the court may reduce or not award statutory damages only when, based on the law as it existed at the time of the request, (1) a well-informed person responsible for the requested public records would have reasonably believed that R.C. 149.43(B) did not require that they be produced and (2) a well-informed person responsible for the requested public records would have reasonably believed that withholding the records would serve the public policy that underlies the authority asserted for withholding them. R.C. 149.43(C)(2)(a) and (b).

{¶ 56} A court also has the discretion to award attorney fees to an aggrieved requester, R.C. 149.43(C)(3)(b), but a court may not award attorney fees when it finds that both factors identified above are met, *see* R.C. 149.43(C)(3)(c)(i) and (ii). In other words, if either of the two factors above is not met, the court must award statutory damages and may award attorney fees.

### III. Relevant Caselaw

{¶ 57} The following two cases cited by the majority illuminate the fact that respondents should have been aware that the Department is subject to the Public Records Act and that respondents were therefore required to comply with R.C. 149.43(B).

#### A. State ex rel. Schiffbauer v. Banaszak

{¶ 58} In *State ex rel. Schiffbauer v. Banaszak*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, the editor of a student newspaper brought a mandamus action against the Otterbein University Police Department seeking to compel the department to produce records in response to a public-records request. This court held that the private university's police department was a public office under the

Public Records Act and that it therefore was required to produce the requested records. *Id.* at ¶ 2. We came to that conclusion because the department had been established by the laws of this state and because its sworn, state-certified police officers exercised the plenary police power to enforce laws and maintain the peace, a function of government. *Id.* at ¶ 2, 9.

*B.* State ex rel. Oriana House, Inc. v. Montgomery

{¶ 59} In *State ex rel. Oriana House, Inc. v. Montgomery*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, this court devised a test to determine whether a private entity is the functional equivalent of a public office such that it is subject to the Public Records Act. In determining whether a private entity is the functional equivalent of a public office, courts consider the following factors: "(1) whether the entity performs a governmental function, (2) the level of government funding, (3) the extent of government involvement or regulation, and (4) whether the entity was created by the government or to avoid the requirements of the Public Records Act." *Id.* at ¶ 25.

## IV. Relators Are Entitled to Statutory Damages and Should Be Awarded Attorney Fees

{¶ 60} Relators are entitled to statutory damages and this court should exercise our discretion to award attorney fees because (1) relators sent their requests electronically as permitted by R.C. 149.43(C)(2), (2) respondents failed to comply with their public-records obligations, *id.*, and (3) the first factor under both R.C. 149.43(C)(2)(a) and R.C. 149.43(C)(3)(c)(i) is not met. In analyzing the Department's characteristics to determine whether it is subject to the Public Records Act either as a public office, similar to the Otterbein University Police Department in *Schiffbauer*, or as the functional equivalent of a public office under the *Oriana House* test, the majority highlights an abundance of relevant facts and analogous cases that would lead a well-informed person responsible for the

requested public records to reasonably believe that respondents had an obligation under R.C. 149.43(B) to produce the records.

{¶ 61} As the majority states, the Department "performs a government function." Majority opinion, ¶ 29. The majority goes so far as to say that the Department "exercises a *core* function of government." (Emphasis added.) *Id.* at ¶ 25; *see Oriana House* at ¶ 25. And the majority recognizes that pursuant to a city ordinance, the Department and its officers have the authority to exercise police powers and are subject to the same regulations as other police departments and state-certified officers. Majority opinion at ¶ 24; *see Schiffbauer*, 142 Ohio St.3d 535, 2015-Ohio-1854, 33 N.E.3d 52, at ¶ 2, 9. As we said long ago, "[p]olice power is the very backbone, heart, and head of all government." *Froelich v. Cleveland*, 99 Ohio St. 376, 398, 124 N.E. 212 (1919).

{¶ 62} Even more, the majority recognizes that Sandusky regulates and is involved with the Department. Majority opinion at ¶ 31; *see Oriana House*, 110 Ohio St.3d 456, 2006-Ohio-4854, 854 N.E.2d 193, at ¶ 25. It cannot deny that the Department's sworn, state-certified police officers, *see Schiffbauer* at ¶ 2, are appointed by the city manager, a government official, and that they work closely with the Sandusky Police Department. *See* majority opinion at ¶ 31.

{¶ 63} The majority also finds that the Department's officers are similar to the officers in *Schiffbauer*, whom this court determined were members of a public office. Majority opinion at ¶ 24. The majority even points out that in *Schiffbauer*, the private university's board of trustees had appointed the officers, while here, a government official appointed the Department's officers. Majority opinion at ¶ 24.

{¶ 64} Even so, in the majority's eyes, a well-informed person responsible for the public records requested by relators could be aware of all this and still have reasonably believed that disclosure of the records was not required under the Public Records Act. Although it is not obvious how the Department was created, *see Oriana House* at ¶ 25, and although the Department receives little or no government

funding, *see id.*, the Department is inextricably intertwined with the government and was fully aware that it has—and exercises—police power, a traditional government function. Therefore, at the time of relators' requests, under existing law emanating from *Schiffbauer* and *Oriana House*, a well-informed person responsible for the requested public records would have reasonably believed that respondents had an obligation under the Public Records Act to produce them. Accordingly, relators are entitled to statutory damages and should be awarded attorney fees.

### V. Conclusion

{¶ 65} I concur in the majority's judgment granting a writ of mandamus ordering that certain records requested by relators be produced and awarding court costs. But because relators sent their requests electronically, respondents failed to comply with their obligations under the Public Records Act, and the first factor under both R.C. 149.43(C)(2)(a) and R.C. 149.43(C)(3)(c)(i) is not met, this court may not reduce or eliminate an award of statutory damages and we should exercise our discretion to award attorney fees. Therefore, I concur in part and dissent in part and would award relators statutory damages and attorney fees.

STEWART, J., concurs in the foregoing opinion.

_____

Frost Brown Todd, L.L.C., Ryan W. Goellner, and Kevin T. Shook, for relators.

Reminger Co., L.P.A., Justin D. Harris, and Hannah R. Duschl, for respondents.

_____