[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Gilreath v. Cuyahoga Job & Family Servs.*, Slip Opinion No. 2024-Ohio-103.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2024-OHIO-103

THE STATE EX REL. GILREATH *v*. CUYAHOGA JOB AND FAMILY SERVICES ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Gilreath v. Cuyahoga Job & Family Servs.*, Slip Opinion No. 2024-Ohio-103.]**

*Mandamus—Public Records Act—Petitioner who requested to inspect records maintained by Department of Job and Family Services and who received responsive records from department in electronic-file format has not shown by clear and convincing evidence a right to inspect requested records "in their native electronic format"—An office is responsible for producing only public records over which it has custody and control—Mandamus relief will not be granted when such relief has not been requested in writ petition—Writ denied.*

(No. 2022-0824—Submitted November 14, 2023—Decided January 17, 2024.)

IN MANDAMUS.

————————————

**Per Curiam.**

{¶ 1} Relator, Marcellus Gilreath, filed this original action in mandamus seeking a writ to compel respondents, Ohio Department of Job and Family Services ("ODJFS") and its director Matt Damschroder,[1] to provide documents in response to his public-records request. We deny Gilreath's request for a writ of mandamus. We grant Gilreath's request for an award of statutory damages but deny his request for awards of court costs and attorney fees.

## I. FACTUAL AND PROCEDURAL HISTORY

{¶ 2} On February 25, 2022, Gilreath's counsel, Brian Bardwell, emailed a public-records request to ODJFS's director of communications, Bill Teets. Teets was listed on ODJFS's website as the contact for media to send public-records requests to.

{¶ 3} In his request, Gilreath sought access to the following records:

1. CRIS-E [Client Registry Information System Enhanced] case history for Dr. Gilreath;

2. Ohio Benefits case history for Dr. Gilreath;

3. Overpayment records for Dr. Gilreath;

4. Records of any investigation into Dr. Gilreath's alleged theft of food stamps.

{¶ 4} In the request, Bardwell stated that he preferred to inspect the records "in person, in their native electronic format." Bardwell requested that if that were

---

1. Gilreath originally named four additional respondents: Cuyahoga Job and Family Services; its director, Kevin Gowan; the Office of the Cuyahoga County Prosecutor; and Cuyahoga County Prosecutor Michael O'Malley. Gilreath has since dismissed all parties other than ODJFS and Damschroder. *See* 168 Ohio St.3d 1465, 2022-Ohio-4297, 198 N.E.3d 890.

not possible that he be provided electronic copies of the requested records by email or by a link to a file-sharing site.

**{¶ 5}** Several minutes after Bardwell sent the email, Teets sent a reply stating that he would "pass this [request] along to [ODJFS's] records section."

**{¶ 6}** However, neither ODJFS nor Damschroder produced any documents or provided any further response to the public-records request until after Gilreath filed this mandamus action. On June 28, Bardwell sent a follow-up email to Teets asking for an update on the public-records request. And on July 5, Gilreath filed this mandamus action; both ODJFS and Damschroder were served on July 13. On July 15, Teets informed Bardwell that he was checking with ODJFS's records section about the status of the request.

**{¶ 7}** On July 19, ODJFS Senior Legal Counsel Kelly Brogan responded to Gilreath's public-records request by email, providing copies of the requested CRIS-E records. Brogan wrote that "[n]o documents were found relating to overpayments or within Ohio Benefits" and that "IPV [intentional program violation] related documents are kept by the county." (Intentional-program-violation records relate to investigations of benefits fraud.) She asked Bardwell to let her know "of any questions or concerns related to [the] request." Bardwell did not respond to this email. Brogan avers in an affidavit that she found out about Gilreath's mandamus action on July 19 when she was compiling the records in response to the public-records request.

**{¶ 8}** In their answer and merit brief, ODJFS and Damschroder state that the failure to respond to the request prior to Gilreath's filing this mandamus action was due to an internal-communication error. They claim that the employee who was supposed to email the responsive documents to Bardwell mistakenly thought another employee had already done so.

**{¶ 9}** We referred the case to mediation. 167 Ohio St.3d 1454, 2022-Ohio-2388, 190 N.E.3d 630. After mediation, on December 29, 2022, Gilreath filed an amended complaint.

**{¶ 10}** The amended complaint contains additional allegations regarding ODJFS's email system. Gilreath alleges that ODJFS provides email-hosting services to county job-and-family-services agencies and that ODJFS's email server stores emails that employees of Cuyahoga Job and Family Services ("Cuyahoga JFS") send and receive. He alleges that ODJFS does not allow county agencies direct access to retrieve their emails from ODJFS's servers and that instead, ODJFS searches for a county's emails when a county agency requests them. Gilreath alleges that ODJFS knew that Cuyahoga JFS was responsible for the investigation for which he was seeking related records and that any emails generated by Cuyahoga JFS would be on ODJFS's servers but that ODJFS did not search its servers for any Cuyahoga JFS emails that were responsive to his public-records request.

**{¶ 11}** ODJFS and Damschroder agree that the state provides email services for county job-and-family-services agencies, but they state that the Ohio Department of Administrative Services ("DAS")—not ODJFS—provides those services. They state that if a county agency needs to retrieve its emails from the server, the county agency will request the emails through ODJFS, which forwards the request to DAS.

**{¶ 12}** ODJFS and Damschroder timely filed an answer and a motion for judgment on the pleadings. We issued an alternative writ, denied the motion for judgment on the pleadings, and ordered the submission of evidence and briefs. 169 Ohio St.3d 1483, 2023-Ohio-1116, 206 N.E.3d 726. Among other evidence, Gilreath submitted depositions of three ODJFS employees: Teets, Brogan, and Steven Johnson, a program administrator. ODJFS and Damschroder filed food-

4

stamp case-file histories for Gilreath under seal and submitted affidavits from six ODJFS employees.

{¶ 13} The evidence in the record supports ODJFS and Damschroder's claim that their failure to respond to Gilreath's public-records request before he filed this mandamus action was due to an internal-communication error. Four minutes after Teets received the email from Bardwell on February 25, he forwarded it to several ODJFS employees as well as to an email address for ODJFS's legal department. The record contains several emails dated February 25 and February 28 that were sent between ODJFS employees who were looking for documents in response to Gilreath's public-records request. On the morning of February 28, Matthew Cunningham, an ODJFS help-desk supervisor, forwarded responsive documents to Brogan. Brogan states in her affidavit that she "mistakenly believed at that time that [Cunningham] or someone from the helpdesk had also sent the records to Attorney Bardwell." In addition, in an email sent to various ODJFS employees on July 15, Brogan stated that the failure to respond to Gilreath's public-records request was her fault and that she thought someone else had sent the documents to Bardwell.

{¶ 14} The evidence also generally supports ODJFS and Damschroder's description of the email services provided to county agencies. ODJFS pays DAS to provide email services to county agencies that administer ODJFS programs. Although each county-agency employee can search his or her own emails, county agencies are unable to directly conduct an agency-wide search of the agency's emails. If they need to conduct an email search, they send request parameters to ODJFS. ODJFS forwards the request to DAS, which performs the search. ODJFS and Damschroder state that ODJFS's practice is to consider county-agency emails to be owned by the county agency.

{¶ 15} In his briefs, Gilreath argues that although ODJFS and Damschroder have produced some documents in response to his public-records request, he is still

entitled to certain relief. He requests a limited writ of mandamus requiring ODJFS and Damschroder to allow him to inspect the documents responsive to request No. 1 (his CRIS-E case files) "in their native electronic format." He also requests a limited writ of mandamus ordering ODJFS and Damschroder either to search for documents responsive to request No. 3 (his overpayment records) and request No. 4 (investigation records regarding his alleged food-stamp fraud) or to certify that no responsive records exist. Finally, he requests awards of statutory damages, court costs, and attorney fees. ODJFS and Damschroder concede that Gilreath is entitled to statutory damages. They argue, however, that they have now produced all the documents responsive to Gilreath's request, that Gilreath is not entitled a writ of mandamus, and that he is not entitled to awards of court costs or attorney fees.

## II. LEGAL ANALYSIS

### A. ODJFS and Damschroder's motion to stay discovery is moot

{¶ 16} As an initial matter, two days before we denied ODJFS and Damschroder's motion for judgment on the pleadings, they filed a motion to stay discovery, requesting that we stay discovery until we ruled on their motion for judgment on the pleadings. Because we have already ruled on ODJFS and Damschroder's motion for judgment on the pleadings, *see* 169 Ohio St.3d 1483, 2023-Ohio-1116, 206 N.E.3d 726, we deny the motion to stay discovery as moot.

### B. Writ of mandamus

{¶ 17} Mandamus is an appropriate remedy to compel compliance with the Public Records Act, R.C. 149.43. R.C. 149.43(C)(1)(b). To be entitled to a writ of mandamus, Gilreath must establish a clear legal right to the requested relief and a clear legal duty on the part of ODJFS and Damschroder to provide it. *State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 6. But as the relator in a public-records mandamus case (as opposed to another type of mandamus case), he need not establish the lack of an adequate remedy in the ordinary course of law. *State ex rel. Am. Civ. Liberties Union of Ohio, Inc. v.*

6

*Cuyahoga Cty. Bd. of Commrs.*, 128 Ohio St.3d 256, 2011-Ohio-625, 943 N.E.2d 553, ¶ 24.  Gilreath must establish entitlement to his requested relief by clear and convincing evidence.  *State ex rel. Pietrangelo v. Avon Lake*, 149 Ohio St.3d 273, 2016-Ohio-5725, 74 N.E.3d 419, ¶ 14.

{¶ 18} Gilreath argues that he is entitled to a writ of mandamus for four reasons.  We address each argument in turn.

*1. Inspecting CRIS-E case files "in their native electronic format"*

{¶ 19} Gilreath first argues that he is entitled to a limited writ of mandamus ordering ODJFS and Damschroder to allow him to inspect his CRIS-E case files "in their native electronic format."  CRIS-E is an electronic database of benefits provided by ODJFS.  Gilreath requested that he be allowed to inspect his CRIS-E case files and that if possible, he be permitted to inspect the records in person "in their native electronic format."  Brogan emailed Bardwell screenshots of Gilreath's CRIS-E case files, which had been converted to a PDF file.  Gilreath argues, however, that the Public Records Act requires ODJFS and Damschroder to allow him to inspect these records in the CRIS-E database.

{¶ 20} In response, ODJFS and Damschroder argue that they are not required to allow Gilreath access to the database to inspect the files "in their native electronic format."  Gilreath contends that under R.C. 149.43(B)(6), he is entitled to inspect the records "in their native electronic format."  R.C. 149.43(B)(6) provides that a person requesting a "copy" of a public record may

> choose to have the public record *duplicated* upon paper, *upon the same medium upon which the public office or person responsible for the public record keeps it*, or upon any other medium upon which the public office or person responsible for the public record determines that it reasonably can be duplicated as an integral part of

> the normal operations of the public office or person responsible for
> the public record.

(Emphasis added.) Gilreath, however, is not requesting *copies* of the records, but rather, he is requesting to *inspect* them. *See State ex rel. Toledo Blade Co. v. Seneca Cty. Bd. of Commrs.*, 120 Ohio St.3d 372, 2008-Ohio-6253, 899 N.E.2d 961, ¶ 37 (distinguishing between requests to inspect records and requests to copy records). His request thus falls outside the purview of R.C. 149.43(B)(6).

{¶ 21} When a requester requests to inspect public records, the Public Records Act requires that "all public records responsive to the request * * * be promptly prepared and made available for inspection." R.C. 149.43(B)(1). ODJFS employees prepared responsive records for Gilreath and emailed them to his attorney. Gilreath provides no support for his proposition that ODJFS is required to allow him direct access to its computer system to inspect the CRIS-E case files, particularly when other files within the same system pertain to other benefits recipients and are confidential by law. *See* R.C. 5101.27; 7 C.F.R. 272.1. We find that Gilreath has not shown by clear and convincing evidence that ODJFS and Damschroder improperly refused his request to inspect his CRIS-E case files "in their native electronic format."

{¶ 22} ODJFS and Damschroder additionally argue that even if they are required to allow a requester to inspect public records "in their native electronic format," CRIS-E case files are not public records. Because we deny this portion of Gilreath's petition for a writ of mandamus on other grounds, we need not decide this issue.

### 2. *Search for overpayment records*

{¶ 23} Gilreath next asks that we issue a limited writ of mandamus ordering ODJFS and Damschroder to search for his overpayment records, which he submitted as request No. 3. ODJFS and Damschroder have submitted evidence of

having searched for overpayment records relating to Gilreath and having found none. Brogan told Gilreath this when she responded to his public-records request. We therefore deny this part of Gilreath's writ petition.

3. *Search for Cuyahoga JFS emails relating to food-stamp-fraud investigations*

**{¶ 24}** Gilreath next asks that we issue a limited writ of mandamus ordering ODJFS and Damschroder to search for records of any investigation into Gilreath's alleged theft of food stamps, which Gilreath submitted as request No. 4. Gilreath asks that we order ODJFS and Damschroder to search Cuyahoga JFS's emails that he alleges are kept and maintained on an email server by ODJFS or to certify that no such records exist.

**{¶ 25}** As attested to by Brogan and the chief of ODJFS's fraud-control section, Christopher Dickens, ODJFS does not conduct investigations into benefits fraud and does not have records related to such investigations; instead, the county agency that administers the benefits is responsible for those types of investigations. On July 18, Brogan emailed Dickens about Gilreath's public-records request. Dickens saw a note in Gilreath's CRIS-E case files about an investigation in 2013. Dickens stated in his affidavit that "[a]s a courtesy," he emailed Cuyahoga JFS employees and asked them to send him any documents related to the investigation into Gilreath. They did not send him any documents but informed him that Cuyahoga JFS was also a respondent in Gilreath's mandamus action. In response to Gilreath's public-records request, Brogan informed Bardwell that "IPV related documents are kept by the county."

**{¶ 26}** Gilreath argues, however, that even if ODJFS did not conduct its own investigation into any allegations of fraud against him, it keeps and maintains Cuyahoga JFS's emails that are related to such an investigation. He asserts that because ODJFS was aware of the Cuyahoga JFS investigation, it had a duty to search the county agency's emails in response to Gilreath's request for "records of any investigation into Dr. Gilreath's alleged theft of food stamps."

**{¶ 27}** ODJFS and Damschroder counter that even if we find that ODJFS has possession and control of Cuyahoga JFS's emails related to any food-stamp-fraud investigation, Gilreath did not request these particular emails with reasonable clarity. *See State ex rel. Glasgow v. Jones*, 119 Ohio St.3d 391, 2008-Ohio-4788, 894 N.E.2d 686, ¶ 17 (person requesting public records must identify with reasonable clarity records requested). We agree. Gilreath requested access to "[r]ecords of any investigation into Dr. Gilreath's alleged theft of food stamps." Such a request does not identify with reasonable clarity that Gilreath was searching for Cuyahoga JFS's emails that ODJFS assists with storing on a third-party server as opposed to ODJFS's own emails related to any such investigation. At a minimum, when ODJFS responded to Gilreath's public-records request by stating that documents related to investigations are kept by the county, Gilreath should have clarified that he was also seeking Cuyahoga JFS–employee emails stored by ODJFS.

**{¶ 28}** In addition, ODJFS and Damschroder argue that ODJFS does not have possession or control of any county emails. A "public office does not a have a clear legal duty to furnish records that are not in its possession or control." *State ex rel. Horton v. Kilbane*, 167 Ohio St.3d 413, 2022-Ohio-205, 194 N.E.3d 288, ¶ 11; *see also State ex rel. Striker v. Smith*, 129 Ohio St.3d 168, 2011-Ohio-2878, 950 N.E.2d 952, ¶ 28.

**{¶ 29}** The evidence shows that ODJFS pays DAS to provide email services to county agencies that administer ODJFS programs. ODJFS and most county job-and-family-services employees, including Cuyahoga JFS employees, use an email address with the "@ohio.jfs.gov" suffix. DAS contracts with Microsoft to store these emails using Microsoft's cloud service. Neither ODJFS nor the county agencies are able to directly search the county agency's emails. If a county agency needs to conduct a search, it sends request parameters to ODJFS. ODJFS forwards

the request to DAS, which performs the search. DAS then sends any responsive emails to ODJFS, which sends them to the county agency.

{¶ 30} ODJFS does not possess or control the county emails. Emails related to the food-stamp-fraud investigation against Gilreath were created or received by Cuyahoga JFS's employees, not ODJFS or its employees. And ODJFS's payment of the costs associated with Cuyahoga JFS's email services does not mean that ODJFS possesses or controls the emails. Accordingly, we deny this aspect of Gilreath's writ petition.

*4. Request to order ODJFS and Damschroder to organize and maintain ODJFS emails*

{¶ 31} The Public Records Act requires public offices to "organize and maintain public records in a manner that they can be made available for inspection or copying." R.C. 149.43(B)(2). Gilreath asks in his merit brief that we issue a writ of mandamus ordering ODJFS and Damschroder to "organize and maintain their e-mails in a manner that they can be made available for inspection." Gilreath did not request this relief in his petition. We therefore deny this request. *See* S.Ct.Prac.R. 12.02(B)(3) ("All relief sought [in an original action] shall be set forth in the complaint"); *see also State ex rel. Gibbs v. Concord Twp. Trustees*, 152 Ohio App.3d 387, 2003-Ohio-1586, 787 N.E.2d 1248, ¶ 36-37 (11th Dist.) (court could not grant relief that was not requested in mandamus complaint).

## C. Statutory damages

{¶ 32} Gilreath requests that we award him $1,000 in statutory damages. ODJFS and Damschroder concede that Gilreath is entitled to this relief.

{¶ 33} Statutory damages shall be awarded if a requester transmits a written request by hand delivery, electronic submission, or certified mail and the public office or person responsible for public records fails to comply with any obligation under R.C. 149.43(B). R.C. 149.43(C)(2). Gilreath submitted his public-records request via email on February 25, 2022, and ODJFS did not provide a response until

July 19. ODJFS and Damschroder were obligated under the Public Records Act to promptly provide access to the requested records, *see* R.C. 149.43(B)(1), and they concede that the nearly five-month delay in doing so was not a prompt response.

{¶ 34} Statutory damages are set at $100 per day for each business day the public office or person responsible for public records fails to comply with any obligation under R.C. 149.43(B), starting with the day the requester files a mandamus action, with a maximum award of $1,000. R.C. 149.43(C)(2). ODJFS did not produce any of the requested records until 11 business days after Gilreath filed this mandamus action, so we award the maximum amount—$1,000 in statutory damages.

## D. Court costs

{¶ 35} Gilreath requests an award of court costs. We deny the request.

{¶ 36} An award of court costs is mandatory if "the court orders the public office or the person responsible for the public record to comply with [R.C. 149.43(B)]." R.C. 149.43(C)(3)(a)(i); *see State ex rel. Hedenberg v. N. Cent. Corr. Complex*, 162 Ohio St.3d 85, 2020-Ohio-3815, 164 N.E.3d 358, ¶ 13. Because we do not order ODJFS and Damschroder to comply with R.C. 149.43(B), Gilreath is not entitled to an award of court costs under R.C. 149.43(C)(3)(a)(i).

{¶ 37} Court costs shall also be awarded when a court determines that the public office or person responsible for public records acted in bad faith when making the requested records available after a mandamus action was filed but before the court ordered the production of the records. R.C. 149.43(C)(3)(a)(ii); *see Hedenberg* at ¶ 13. Bad faith " 'generally implies something more than bad judgment or negligence.' " *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 81, quoting *State v. Tate*, 5th Dist. Fairfield No. 07CA55, 2008-Ohio-3759, ¶ 13. We have declined to find bad faith when the circumstances surrounding the failure to produce a public record indicate the failure was a

"product of oversight, not of bad faith." *Horton*, 167 Ohio St.3d 413, 2022-Ohio-205, 194 N.E.3d 288, at ¶ 35.

{¶ 38} Gilreath argues that ODJFS and Damschroder's failure to produce responsive documents until July 19 was the result of bad faith. The record contains several emails dated February 25 and February 28 between ODJFS employees who were looking for documents responsive to Gilreath's public-records request. On the morning of February 28, Cunningham (an ODJFS help-desk supervisor) forwarded responsive documents to Brogan (ODJFS senior legal counsel). Brogan states in her affidavit that she "mistakenly believed at that time that [Cunningham] or someone from the helpdesk had also sent the records to Attorney Bardwell." Gilreath did not follow up to inquire about the status of his request for approximately four months, and he filed this mandamus action four business days after his attorney sent a follow-up email on June 28. Although the miscommunication between ODJFS employees was unfortunate, it was "the product of oversight, not of bad faith," *id*.

{¶ 39} When ODJFS and Damschroder responded to Gilreath's discovery requests, they redacted several internal emails, asserting that the redacted information was attorney-client privileged. During Gilreath's depositions of ODJFS's employees, ODJFS's counsel objected to questions about these allegedly privileged emails. Gilreath argues that we should infer from these redactions that ODJFS's counsel instructed ODJFS employees to cease work on Gilreath's public-records request and that such an instruction constitutes bad faith. There is no reason, however, for us to draw an inference of bad faith from ODJFS and Damschroder's assertion of a privilege sufficient to overcome Brogan's sworn statement that she believed somebody else had sent the records to Gilreath's counsel. Gilreath has not shown by clear and convincing evidence that the redacted emails show bad faith on the part of ODJFS and Damschroder.

**{¶ 40}** Gilreath also argues that he is entitled to an award of court costs because ODJFS and Damschroder acted in bad faith by refusing to search for documents in response to request No. 3 (his overpayment records) and request No. 4 (investigation records regarding his alleged food-stamp fraud). However, he does not allege that ODJFS or Damschroder "voluntarily made the public records available to [him] for the first time after [he] commenced the mandamus action, but before the court issued any order concluding whether or not [they were] required to comply with [R.C. 149.43(B)]," R.C. 149.43(C)(3)(b)(iii). Accordingly, Gilreath has not established sufficient grounds for an award of court costs. *See* R.C. 149.43(C)(3)(a)(ii).

### E. Attorney fees

**{¶ 41}** Finally, we turn to Gilreath's request for an award of attorney fees. For the reasons that follow, we deny the request.

#### 1. Award of attorney fees is discretionary

**{¶ 42}** We have consistently held that an award of attorney fees under R.C. 149.43(C)(3)(b) is discretionary. *See, e.g.*, *State ex rel. Harm Reduction Ohio v. OneOhio Recovery Found.*, __ Ohio St.3d __, 2023-Ohio-1547, __ N.E.3d __, ¶ 40; *State ex rel. Summers v. Fox*, 164 Ohio St.3d 583, 2021-Ohio-2061, 174 N.E.3d 747, ¶ 13; *State ex rel. Hicks v. Fraley*, 166 Ohio St.3d 141, 2021-Ohio-2724, 184 N.E.3d 13, ¶ 26. Gilreath argues that this interpretation of the statute is wrong and that the statute makes an award of attorney fees mandatory if certain conditions are met. We find no reason to overturn our precedent on this question.

**{¶ 43}** The Public Records Act states that "the court *may* award reasonable attorney's fees to the relator" if certain conditions are met. (Emphasis added.) R.C. 149.43(C)(3)(b). In contrast, the court "shall" award statutory damages and court costs if certain conditions are met. R.C. 149.43(C)(2) (statutory damages); R.C. 149.43(C)(3)(a) (court costs). "In statutory construction, the word 'may' shall be construed as permissive and the word 'shall' shall be construed as mandatory unless

14

there appears a clear and unequivocal legislative intent that they receive a construction other than their ordinary usage." *Dorrian v. Scioto Conservancy Dist.*, 27 Ohio St.2d 102, 271 N.E.2d 834 (1971), paragraph one of the syllabus.

**{¶ 44}** Gilreath makes several arguments regarding why R.C. 149.43(C)(3)(b) should be interpreted as making an award of attorney fees mandatory. First, he argues that if attorney fees are discretionary, R.C. 149.43(C)(3)(c) is superfluous. R.C. 149.43(C)(3)(c) provides that a court "shall not" award attorney fees if the court determines that a well-informed public office or person responsible for public records would have reasonably believed that the office's or person's conduct did not constitute a failure to comply with R.C. 149.43(B) and that such conduct served the public policy underlying the authority asserted as permitting the conduct. Treating an award of attorney fees as discretionary, however, does not make R.C. 149.43(C)(3)(c) superfluous. Although a court *may* award attorney fees if one of the conditions in R.C. 149.43(C)(3)(b) is met, it *shall not* award them if the conditions in R.C. 149.43(C)(3)(c) are met.

**{¶ 45}** Second, Gilreath argues that because attorney fees "shall be construed as remedial and not punitive," R.C. 149.43(C)(4)(a), the court must award attorney fees so long as the requester made an attorney-fee payment that can be remedied. A requirement that attorney fees be construed as remedial, however, does not mean that a court must award them.

**{¶ 46}** Finally, Gilreath argues that treating an award of attorney fees as mandatory would support the purpose of the Public Records Act by encouraging public offices to produce public records upon request. Even if true, such a public-policy justification would not control over the plain language of the statute.

**{¶ 47}** The plain language of R.C. 149.43(C)(3)(b) makes an award of attorney fees discretionary. We do not overrule our long-standing precedent holding the same.

*2. We decline to award attorney fees*

**{¶ 48}** We may award attorney fees if we order ODJFS or Damschroder to comply with their responsibilities under the Public Records Act or if we find that one of the conditions in R.C. 149.43(C)(3)(b) has been met. *State ex rel. Pool v. Sheffield Lake*, __ Ohio St.3d __, 2023-Ohio-1204, __ N.E.3d __, ¶ 28. As discussed above, we deny Gilreath's request for a writ of mandamus compelling ODJFS or Damschroder to comply with the Public Records Act in relation to his February 25 public-records request. In addition, we may award attorney fees if ODJFS or Damschroder promised to fulfill Gilreath's request within a specified period and then failed to meet that promise, R.C. 149.43(C)(3)(b)(ii), but no such promise was made here. We may also award attorney fees if we find that ODJFS or Damschroder acted in bad faith when responsive records were voluntarily produced after Gilreath filed this mandamus action. R.C. 149.43(C)(3)(b)(iii). But as discussed above, neither ODJFS nor Damschroder acted in bad faith.

**{¶ 49}** Gilreath does, however, meet the requirements for an award of attorney fees under R.C. 149.43(C)(3)(b)(i), which allows for an award of fees if the "public office or the person responsible for the public records failed to respond affirmatively or negatively to the public records request in accordance with the time allowed under [R.C. 149.43(B)]." ODJFS was required to "promptly" make the requested documents available for inspection, R.C. 149.43(B)(1). Gilreath made his public-records request on February 25, and ODJFS employees did not provide responsive documents until July 19. Such a response was not prompt. However, we decline to award attorney fees here.

**{¶ 50}** ODJFS produced all responsive documents on July 19 and informed Gilreath that it did not have the other documents he requested. Gilreath, however, proceeded to conduct extensive discovery in the case by propounding numerous interrogatories, requests for admissions, and requests for production of documents and by deposing three ODJFS employees. This discovery was related to records

that ODJFS employees had already produced or informed Gilreath that ODJFS did not have. An award of attorney fees would be disproportionate to the case. *See Pool* at ¶ 32 (declining to award attorney fees when doing so would be disproportionate to the case).

### III. CONCLUSION

**{¶ 51}** For the foregoing reasons, we deny Gilreath's request for a writ of mandamus. We grant Gilreath's request for an award of statutory damages and award $1,000 in statutory damages. We deny Gilreath's request for awards of court costs and attorney fees. We also deny as moot ODJFS's motion to stay discovery.

Writ denied.

DEWINE, DONNELLY, STEWART, BRUNNER, and DETERS, JJ., concur.

KENNEDY, C.J., concurs in judgment only.

FISCHER, J., concurs in part and dissents in part and would deny relator's request for statutory damages.

———————————

Speech Law, L.L.C., and Brian D. Bardwell, for relator.

Dave Yost, Attorney General, and Caitlyn N. Johnson and Iris Jin, Assistant Attorneys General, for respondents.

———————————