[Cite as *State ex rel. Harless v. DMR Automotive Servs., Inc.*, 2024-Ohio-5395.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Keith Harless, | : | |
| Relator, | : | No. 23AP-53 |
| v. | : | (REGULAR CALENDAR) |
| DMR Automotive Services Inc.<br>dba Almira Tire and Service Center et al., | : | |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 14, 2024.

**On brief:** *Deery & Gibbons, LLC,* and *Daniel J. Gibbons,* for relator.

**On brief:** *Dave Yost,* Attorney General, and *Anna Isupova,* for respondent Industrial Commission of Ohio.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

BEATTY BLUNT, J.

{¶ 1}  Relator, Keith Harless ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order that found he had reached maximum medical improvement ("MMI") and terminated his temporary total disability ("TTD") compensation benefits.

{¶ 2}  This court referred this matter to a magistrate of this court pursuant to Civ.R. 53 and Loc.R. 13(M) of the Tenth District Court of Appeals.  The magistrate considered the action on its merits and issued a decision that includes findings of fact and conclusions of law, which is appended hereto.  The magistrate first found that in terminating TTD compensation as of the June 22, 2022 hearing, the district hearing officer (and

subsequently, the commission) properly relied upon Dr. Arsal Ahmad's May 4, 2022 independent medical examination ("IME") opinion that found claimant had reached MMI as of the date of examination, which was also May 4, 2022. No objections have been filed by any party to this finding.

{¶ 3} Next, relying on the recent Supreme Court of Ohio case of *State ex rel. Dillon v. Indus. Comm.*, __Ohio St.3d__, 2024-Ohio-744, the magistrate determined that claimant was no longer entitled to TTD compensation as of the date he reached MMI, on May 4, 2022, and the BWC is entitled to recoup the amount of TTD paid to claimant for any period after this date. The magistrate has recommended that this court grant a limited writ of mandamus ordering the commission to modify its order to reflect that any overpayment shall be recouped from May 4, 2022, the date claimant was found to have reached MMI. It is this finding in the magistrate's decision to which the commission has filed an objection, to wit:

> The magistrate erred in finding that the Court's decision in the *Dillon* case applies retroactively to the facts of this case[.]

{¶ 4} Because the commission has filed an objection, we must independently review the record and the magistrate's decision to ascertain whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d). The commission has not objected to the factual findings of the magistrate and upon our review we find no error pertaining to same. We thus turn to whether the magistrate has appropriately applied the law in this matter.

{¶ 5} Relator is entitled to a writ of mandamus if he shows by clear and convincing evidence that he has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that there is no adequate remedy in the ordinary course of the law. *State ex rel. Zarbana Industries, Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, ¶ 10. When an order of the commission "is adequately explained and based on some evidence, there is no abuse of discretion and a reviewing court must not disturb the order." *State ex rel. Aaron's, Inc. v. Ohio Bur. of Workers' Comp.*, 148 Ohio St.3d 34, 2016-Ohio-5011, ¶ 18. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 6}    TTD compensation awarded, pursuant to R.C. 4123.56, is compensation for wages lost when a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached MMI.  R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 7}    In the commission's sole objection, it asserts that the magistrate wrongly determined that the Supreme Court's decision in *Dillon* applies retroactively to the facts of this case.  Specifically, the commission argues that the magistrate erred in finding that *Dillon* applies in this case so as to require that any overpayment of TTD compensation made to relator must be recouped from the date relator was found to have reached MMI, on May 4, 2022, rather than from the date of the commission's hearing on relator's MMI status, on August 4, 2022.  As explained below, we agree.

{¶ 8}    Prior to the Supreme Court's decision in *Dillon*, the operative date for terminating TTD compensation and for calculating any resulting overpayment of such compensation was the date of the commission hearing finding a claimant had reached MMI.  *State ex rel. Russell v. Indus. Comm.*, 82 Ohio St.3d 516 (1998).  In *Dillon*, the Supreme Court expressly overruled its prior holding in *Russell*, finding that its decision in *Russell* was in contravention of the plain language of R.C. 4123.511(K) and R.C. 4123.56(A), which requires the Bureau of Workers' Compensation ("BWC") to recoup any overpayment of compensation that a claimant receives after reaching MMI because R.C. 4123.56(A) does not permit a claimant to receive TTD compensation after reaching MMI.  *Dillon* at ¶ 14-17. Therefore, the Supreme Court held the date the claimant reaches MMI, rather than the date of the commission hearing finding the claimant had reached MMI, is the operative date for terminating TTD compensation and for calculating any overpayment of TTD compensation.  *Id*. at ¶ 17-18.

{¶ 9}    Notwithstanding the holding in *Dillon*, the commission argues that *Dillon* should not be applied retroactively to this case, and that any recoupment of TTD benefits should be calculated from the date of the hearing.  The commission acknowledges that, generally, a decision of the Supreme Court overruling a prior decision " 'is retrospective in

its operation, and the effect is not that the former was bad law, but that it never was the law.' " *State ex rel. Walmart, Inc. v. Hixson*, 170 Ohio St.3d 338, 2022-Ohio-4187, ¶ 11, quoting *Peerless Elec. Co. v. Bowers*, 164 Ohio St. 209, 210 (1955). Nevertheless, the commission relies on *DiCenzo v. A-Best Prods. Co.*, 120 Ohio St.3d 149, 2008-Ohio-5327, in support of its argument that *Dillon* should apply only prospectively. In *DiCenzo*, the Supreme Court stated:

> [A]n Ohio court has discretion to apply its decision only prospectively after weighing the following considerations: (1) whether the decision establishes a new principle of law that was not foreshadowed in prior decisions; (2) whether retroactive application of the decision promotes or retards the purpose behind the rule defined in the decision; and (3) whether retroactive application of the decision causes an inequitable result.

*DiCenzo* at ¶ 25. The commission asserts that all three *DiCenzo* factors weigh in favor of applying *Dillon* only prospectively. We agree with this assertion, as explained below.

{¶ 10} With respect to the first factor, it is clear the Supreme Court's ruling in *Dillon* established a new principle of law. In *Dillon*, the Supreme Court expressly overruled its prior holding in *Russell* and held the operative date for terminating TTD compensation and for calculating an overpayment is the date the claimant reached MMI, rather than the date of the MMI hearing, as was the law under *Russell*. *Dillon* at ¶ 17. The Supreme Court's decision in *Dillon* made clear that *Russell* was no longer good law. Thus, the first factor weighs in favor of only prospective application of *Dillon*.

{¶ 11} Next, regarding the second factor, we find the retroactive application of the decision in *Dillon* would retard rather than promote the purpose behind the rule established by *Dillon*. While the payment of TTD compensation after a claimant has reached MMI status is prohibited under R.C. 4123.56(A), applying *Dillon* retroactively would not promote the goal of harmonizing the jurisprudence of TTD compensation while also protecting claimant's reliance interests. *See Walmart* at ¶ 29. Instead, applying *Dillon* retroactively to injured workers' claims whose TTD compensation was adjudicated decades ago pursuant to the long-standing holding in *Russell* would result in confusion and a complete disregard for claimant's reliance interests. *See id.* Thus, the second *DiCenzo* factor weighs in favor of only prospective application of *Dillon*.

{¶ 12} Finally, the third *DiCenzo* factor, regarding whether retroactive application of the decision causes an inequitable result, also weighs in favor of applying *Dillon* only prospectively. This factor is concerned, in part, with " ' "avoiding injustice in cases dealing with questions having widespread ramifications for person not parties to the action." ' " *DiCenzo* at ¶ 12, quoting *Minister Farmers Coop. Exchange Co., Inc. v. Meyer*, 117 Ohio St.3d 459, 2008-Ohio-1259, ¶ 30, quoting *Hoover v. Bd. of Cty. Commrs.*, 19 Ohio St.3d 1, *9 (1985). The retroactive application of *Dillon* would cause injustice to all parties, including non-parties to this action, whose TTD compensation was previously adjudicated pursuant to *Russell*, which at the time of those adjudications was still good law. Considering that injured workers' TTD compensation have been receiving TTD compensation adjudicated pursuant to *Russell* for 26 years, the resulting inequitable impact would be particularly widespread. Thus, the third *DiCenzo* factor weighs in favor of only prospective application of *Dillon*.

{¶ 13} Therefore, we find that all three *DiCenzo* factors weigh in favor of applying *Dillon* only prospectively. Accordingly, we sustain the commission's sole objection to the magistrate's decision.

{¶ 14} Having conducted an examination of the magistrate's decision and an independent review of the evidence pursuant to Civ. R. 53, we find the magistrate did not properly apply the relevant law to the salient facts in reaching the conclusion that the Supreme Court's decision in the *Dillon* case applies retroactively to the facts of this case. Therefore, we adopt the magistrate's decision as it pertains to the findings of fact as our own. However, we modify the magistrate's conclusions of law to reflect that the Supreme Court's decision in *Dillon* does not apply retroactively to this case, and claimant's request for a writ of mandamus is therefore denied in its entirety.

*Objection sustained*;
*writ of mandamus denied.*

LELAND, J., concurs.
LUPER SCHUSTER, J., concurring separately.

LUPER SCHUSTER, J., concurring.

{¶ 15} I agree with the majority that the magistrate erred in recommending we grant a limited writ of mandamus, but I reach that conclusion for different reasons than the majority. I would find that we need not reach the question of whether *State ex rel. Dillon*

*v. Indus. Comm.*, ___ Ohio St.3d ___, 2024-Ohio-744 applies prospectively or retroactively because the magistrate erred in considering *Dillon's* application to this matter.

{¶ 16} The complaint in this matter, filed by the employee, sought a writ of mandamus ordering the commission to vacate its order finding the employee had reached MMI. Neither party sought relief in the form of a writ ordering the commission to modify its order to initiate a recoup of overpayment of TTD compensation. As this court has held, "[w]e cannot grant relief that is not requested." *State ex rel. Union Metal Corp. v. Indus. Comm.*, 10th Dist. No. 03AP-1247, 2005-Ohio-847, ¶ 3 (rejecting magistrate's recommendation to grant a writ compelling the commission to *reinstate* one order when the requested relief was for a writ ordering the commission to *vacate* a different order), citing *State ex rel. Gibbs v. Concord Twp. Trustees*, 152 Ohio App.3d 387, 2003-Ohio-1586, ¶ 37 (11th Dist.). *See also State ex rel. Scott v. Toledo Corr. Inst.*, ___ Ohio St.3d ___, 2024-Ohio-2694, ¶ 14 ("[t]his court and others have refused to provide relief that parties fail to seek in their pleadings"), citing *State ex rel. Gilreath v. Cuyahoga Job & Family Servs.*, 175 Ohio St.3d 46, 2024-Ohio-103, ¶ 31 (denying mandamus relief for which relator argued in merit brief but had not sought in his petition for a writ of mandamus). Because no party requested such relief, I would reject the magistrate's recommendation that we grant a limited writ ordering the commission to modify its order to recoup overpayment of TTD compensation. Thus, I would not reach the question of whether *Dillon* should be applied prospectively or retroactively.

{¶ 17} While I agree with the majority's ultimate conclusion that this court deny the requested writ in its entirety, I concur separately because I reach that conclusion for different reasons than those relied upon by the majority.

_____

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State ex rel. Keith Harless,             :

      Relator,                 :

v.                                    No. 23AP-53

                                  :

DMR Automotive Services Inc. dba        (REGULAR CALENDAR)
Almira Tire and Service Center et al.,    :

      Respondents.           :

M A G I S T R A T E ' S   D E C I S I O N

Rendered on July 11, 2024

*Deery & Gibbons*, *LLC*, and *Daniel J. Gibbons*, for relator.

*Dave Yost*, Attorney General, and *Anna Isupova*, for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 18} Relator, Keith Harless ("claimant"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that found he had reached maximum medical improvement ("MMI") and terminated his benefits.

Findings of Fact:

{¶ 19} 1. Claimant was injured on January 6, 2014, during the course of his employment with respondent DMR Automotive, Inc. dba Almira Tire and Service Center ("employer"), and his claim was allowed for the following conditions: sprain right shoulder; right rotator cuff tear; tear right glenoid labrum; right bicipital tendonitis; right shoulder impingement; and aggravation of pre-existing osteoarthritis right shoulder.

{¶ 20} 2. A February 25, 2014, MRI of claimant's right shoulder revealed a small tear of the supraspinatus tendon. Claimant underwent physical therapy and other treatment for several years.

{¶ 21} 3. A November 23, 2020, MRI of claimant's right shoulder revealed a high-grade partial thickness tear of the distal supraspinatus tendon and a SLAP tear.

{¶ 22} 4. On April 20, 2021, Daniel Zanotti, M.D., performed on claimant right shoulder arthroscopy with subacromial decompression, rotator cuff repair, and biceps tenodesis. After surgery, claimant was approved for physical therapy, corticosteroid injections, an MRI, and consults with other doctors. Claimant's request for massage therapy was denied. Claimant received TTD compensation while he rehabilitated from surgery.

{¶ 23} 5. On April 6, 2022, claimant sought a second opinion from Amar Mutnal, M.D., due to continuing pain in his right shoulder. Dr. Mutnal found that claimant's shoulder range of motion and strength were quite good, suggesting a healed rotator cuff repair.

{¶ 24} 6. On May 4, 2022, Arsal Ahmad, M.D., conducted an independent medical examination ("IME"), and found the following in a report dated the same date: (1) claimant is unable to return to his previous position as a tire technician; (2) claimant has continued right shoulder pain with limitations of range of motion; (3) claimant has reached MMI; (4) claimant's updated MRI does not demonstrate findings that would require additional intervention; (5) additional treatment is unlikely to result in a fundamental or functional change in his condition; and (6) vocational rehabilitation is recommended from a medical perspective, which would include job retraining for light-to medium-duty employment.

{¶ 25} 7. On May 6, 2022, claimant underwent an MRI of his right shoulder.

{¶ 26} 8. On May 16, 2022, claimant consulted with Dr. Zanotti, who opined in a May 18, 2022, report that claimant's latest MRI showed his right shoulder appeared well healed.

{¶ 27} 9. On May 18, 2022, claimant's claim was referred to the commission to determine whether claimant had reached MMI with regard to the allowed conditions in the claim.

{¶ 28} 10. In a June 1, 2022, report, Dr. Mutnal reviewed the May 6, 2022, MRI results and found the following: (1) claimant has good supination strength of right arm, suggesting undertensioned biceps tenodesis or some degree of loss of fixation, but his strength is good; (2) suspect focal high-grade partial vs. full thickness supraspinatus tearing; (3) likely failure of biceps tenodesis; and (4) recommend right shoulder subacromial injection with physical therapy.

{¶ 29} 11. Pursuant to a request by claimant for additional treatment, the Ohio Bureau of Workers' Compensation ("BWC") allowed injections but denied physical therapy, finding it was reasonably related but not medically necessary since claimant had been diligent with home exercises.

{¶ 30} 12. On June 8, 2022, Brian Studer, D.C., issued a response to Dr. Ahmad's IME report, finding the following: (1) he disagrees with Dr. Ahmad that claimant has reached MMI; (2) while claimant has had surgical intervention, a trial of physical therapy, and injections, there are a multitude of other treatment options that must be considered before declaring claimant to be at MMI; (3) the IME was dated May 5, 2022, but claimant had an MRI on May 6, 2022, and a follow-up visit with an orthopedic surgeon on June 1, 2022, which do not support claimant as being MMI; (4) Dr. Mutnal evaluated claimant on April 6, 2022, and his office notes support the notion that additional modalities and treatment options should be pursued, stating that claimant has not tried ultrasound, acoustic medicine, cold compression, or nerve blocks, and resulting in a SAMs unit being requested on April 14, 2022; (5) massage therapy and work-hardening rehabilitation was requested on April 11, 2022, and is pending; (6) in his May 16, 2022, report, Dr. Zanotti agreed that work conditioning should be extended; and (7) in his June 1, 2022, report, Dr. Mutnal discovered a likely high-grade thickness tear of the supraspinatus and failed tenodesis, and recommended a shoulder injection and short course of physical therapy.

{¶ 31} 13. A hearing was held before a District Hearing Officer ("DHO"), and in a June 28, 2022, order, the DHO found the following: (1) claimant has reached MMI as of the date of the hearing, June 22, 2022, and no further TTD compensation shall be paid after this date; (2) the finding of MMI is based on Dr. Ahmad's May 4, 2022, report; (3) although Dr. Ahmad opines that claimant is unable to return to his former position of employment, any additional treatment is unlikely to result in a fundamental or functional change in his condition; and (4) Dr. Zanotti's May 18, 2022, office notes indicate that

claimant's most-recent MRI on May 6, 2022, reveals that claimant's shoulder appears well healed. Claimant appealed.

{¶ 32} 14. On August 4, 2022, a staff hearing officer ("SHO") issued an order, finding the following: (1) the order of the DHO is modified; (2) TTD compensation is terminated after June 22, 2022 (date of the DHO hearing) based on a finding that the allowed physical conditions in this claim have reached MMI; (3) the finding of MMI is based on the May 24, 2022, report of Dr. Ahmad, who reviewed claimant's medical records, examined claimant, and opined that the allowed physical conditions have reached MMI; and (4) any TTD compensation paid after June 16, 2022, is declared overpaid and is to be recouped. Claimant appealed.

{¶ 33} 15. On August 24, 2022, the commission refused the appeal.

{¶ 34} 16. On January 24, 2023, claimant filed a petition for writ of mandamus, requesting that this court order the commission to vacate its order that found he had reached MMI and terminated his benefits.

Conclusions of Law and Discussion:

{¶ 35} The magistrate recommends this court grant a limited writ of mandamus.

{¶ 36} In order for this court to issue a writ of mandamus, a relator must ordinarily show a clear legal right to the relief sought, a clear legal duty on the part of the respondent to provide such relief, and the lack of an adequate remedy in the ordinary course of law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967).

{¶ 37} A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 38} TTD compensation awarded pursuant to R.C. 4123.56 is compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until

one of four things occurs: (1) the claimant has returned to work; (2) the claimant's treating physician provides a written statement that the claimant is able to return to the former position of employment; (3) work within the physical capabilities of the claimant is made available by the employer or another employer; or (4) the claimant has reached MMI. R.C. 4123.56(A); *State ex rel. Ramirez v. Indus. Comm.*, 69 Ohio St.2d 630 (1982).

{¶ 39} Ohio Adm.Code 4121-3-32(A)(1) provides the definition of MMI for workers' compensation purposes:

> "Maximum medical improvement" is a treatment plateau (static or well-stabilized) at which no fundamental functional or physiological change can be expected within reasonable medical probability in spite of continuing medical or rehabilitative procedures. An injured worker may need supportive treatment to maintain this level of function.

{¶ 40} In the present case, claimant argues that the commission abused its discretion when it found that he reached MMI and terminated his TTD benefits. Comparing his circumstances to the injured worker's in *State ex rel. Keck v. Indus. Comm.*, 10th Dist. No. 20AP-314, 2022-Ohio-2782, claimant contends that he was still experiencing pain and discomfort in his shoulder, as he had been for the previous eight years. Similar to *Keck*, claimant claims, multiple physicians had determined that he would benefit from additional therapies, such as ultrasound, acoustic medicine, and cold compression; thus, he had not reached MMI. Claimant points to the reports of Drs. Mutnal, Zanotti, and Studer to assert that he was still having shoulder pain and issues despite the surgery. Claimant takes issue with Dr. Ahmad's IME opinion, in which he acknowledged that the May 6, 2022, MRI showed tears in his shoulder; claimant was still experiencing constant pain in the shoulder and biceps tendon and decreased range of motion in the shoulder; and claimant had been treated with surgery, physical therapy, and corticoid steroids; however, Dr. Ahmad failed to mention Dr. Mutnal's April 6, 2022, notes that state claimant's shoulder felt like it was tearing apart and suggested ultrasound, acoustic medicine, and cold compression as potential therapies that had not been tried. Claimant also asserts that, similar to *Keck*, Dr. Ahmed glossed over and omitted any specific objective findings as to why relator had reached MMI, and he did not describe how previous treatment requests impacted his decision, completely ignoring the then-pending request for electric stimulation and ultrasound that he had not tried before.

{¶ 41} Claimant argues that the only reliable medical evidence comes from his own doctors, such as Drs. Mutnal and Studer, who suggest additional therapies that had not yet been tried.

{¶ 42} In *Keck*, the worker was awarded TTD compensation and received treatment for several years. The BWC filed a motion to terminate TTD compensation. A DHO terminated benefits because the allowed conditions had reached MMI, relying on a report by Bienvenido Ortega, M.D. An SHO upheld the termination of TTD. In mandamus, a magistrate of this court found Dr. Ortega's report was based entirely upon Dr. Ortega's observation that relator had taken retirement from his position as a police officer, which cannot support termination of TTD because the question of whether an individual is fit or unfit to return to a former position of employment does not determine whether the allowed conditions that impair the claimant's ability to return to work are subject to improvement through further treatment and passage of time. The magistrate noted that Dr. Ortega's report contained only the briefest recitation of two medical record items without analyzing the conclusions contained therein, ignored the rest of relator's extensive medical history, never addressed the definition of MMI, and contained no analysis or recitation of the benefits or improvements to be expected from further treatment. The magistrate further noted that there were voluminous medical records and reports that referred to the benefits to be gained by vision therapy and modifications to the worker's pharmaceutical regimen.

{¶ 43} Upon objections, the court adopted the magistrate's decision. The court found that Dr. Ortega provided no discussion of the specific allowed conditions of the claim or the treatment plateaus the conditions reached to explain MMI, and the sole "basis" cited by Dr. Ortega for his conclusion that MMI had been reached is the worker's own statement that because his ongoing symptoms prevented him from working, he had retired. The court further found that the remainder of Dr. Ortega's report bolstered the conclusion that the worker's retirement was the only basis for concluding that he had reached MMI. The court agreed with the magistrate's observation that the question of whether an individual is fit or unfit to return to a former position of employment does not determine whether the allowed conditions that impair the claimant's ability to return to work are subject to improvement through further treatment and the passage of time. Yet Dr. Ortega cited no other fact other than the worker's retirement as the basis for his

purported "medical opinion" that the allowed conditions had reached MMI. Thus, the court concluded that the magistrate correctly determined that the order of the commission must be vacated because it is not supported by some evidence, and the commission could not rely on the report of Dr. Ortega.

{¶ 44} In the present case, after a review of the record, Dr. Ahmad's May 4, 2022, IME opinion, and *Keck*, the magistrate finds Dr. Ahmad's May 4, 2022, report constitutes some evidence to support the termination of TTD compensation. Although it would have been desirable for Dr. Ahmad's report to provide a more detailed analysis and explanation of the specific questions posed by the BWC, it does not suffer from the same fatal deficits and legally irrelevant rationale as the report relied upon in *Keck* and comports with the some-evidence standard. In Dr. Ahmad's May 4, 2022, report, he opined that claimant was unable to return to his previous position as a tire technician, but he also found that claimant's updated MRI does not demonstrate findings that would require additional intervention, and additional treatment is unlikely to result in a fundamental or functional change in his condition. Unlike Dr. Ortego in *Keck*, Dr. Ahmad did not rely merely on whether claimant was fit or unfit to return to his former position of employment, which, as explained in *Keck*, does not determine whether the allowed conditions are subject to improvement through further treatment and the passage of time. Instead, Dr. Ahmad also rendered an opinion that claimant's updated MRI does not demonstrate findings that would require additional intervention and additional treatment is unlikely to result in a fundamental or functional change in his condition. Again, as stated above, although a more thorough explanation by Dr. Ahmad would be preferrable, his opinion minimally sufficed to provide some evidence for the commission to determine that claimant had reached MMI.

{¶ 45} Although claimant criticizes Dr. Ahmad's IME report and, instead, urges that Drs. Mutnal, Zanotti, and Studor's reports were more credible to show that he could still benefit from additional therapies and was still experiencing pain, the commission made a determination that Dr. Ahmad was more credible, which this court will not disturb in mandamus. Furthermore, although several doctors, including Dr. Ahmad, acknowledged that claimant was still experiencing pain, this is not the test for MMI. Rather, in determining whether an injured worker has reached MMI, the commission must decide whether the worker has reached a treatment plateau at which no

improvement can be expected even with further treatment. Dr. Ahmad believed that claimant could not benefit from any further treatments at this stage. For these reasons, the commission relied upon some evidence to support the termination of claimant's TTD compensation.

{¶ 46} Claimant also argues that the commission abused its discretion when it terminated his TTD compensation as of June 22, 2022, the date of the hearing before the DHO, at which he was found to be MMI, but then ordered that any TTD compensation paid after June 16, 2022, is declared overpaid and subject to recoupment. Claimant asserts that June 22, 2022, was the operative date in question for recoupment of benefits, and it was arbitrary and without basis to find benefits paid after June 16, 2022, were subject to recoupment.

{¶ 47} Although the commission concedes that *State v. Russell v. Indus. Comm.*, 82 Ohio St.3d 516 (1998), holds that TTD must be paid through the date of the commission hearing if there was conflicting medical evidence as to the injured worker's MMI status, and compensation may not be terminated prior to hearing so long as the injured worker's attending physician continued to certify TTD, *Russell* has been overruled since briefing was completed in the present case. In *State ex rel. Dillon v. Indus. Comm. of Ohio*, ___ Ohio St.3d ___, 2024-Ohio-744, the Supreme Court of Ohio overruled *Russell* and found that R.C. 4123.511(K) requires the BWC to recoup any overpayment of compensation that an injured worker receives after the worker reaches MMI, as R.C. 4123.56(A) does not permit a claimant to receive TTD compensation after reaching MMI. The court noted that although R.C. 4123.56(A) requires payments to continue during the determination of the matter, the provision contains an exception: TTD compensation may not be paid for the period after the employee has reached MMI. Thus, *Dillon* commands that it is the date that the injured worker has reached MMI that is the operative date for terminating TTD compensation and calculating an overpayment of benefits and not the date of the commission hearing finding that the worker has reached MMI, as was formerly the case under *Russell*.

{¶ 48} In the present case, in terminating TTD compensation at the June 22, 2022, hearing, the commission relied upon Dr. Ahmad's May 4, 2022, IME opinion that found claimant had reached MMI as of the date of examination, which was also May 4, 2022. Applying *Dillon* to the circumstances here, claimant was not entitled to TTD

compensation as of the date he reached MMI, May 4, 2022, and the BWC is entitled to recoup the amount of TTD paid to claimant for any period after this date. Therefore, this court should issue a limited writ directing the commission to modify its findings to reflect that the operative date of recoupment of any overpayment of TTD benefits was May 4, 2022.

{¶ 49} Accordingly, it is the magistrate's decision that this court should grant a limited writ of mandamus ordering the commission to modify its order to reflect that any overpayment shall be recouped from the date claimant was found to have reached MMI, May 4, 2022.

/S/ MAGISTRATE
THOMAS W. SCHOLL III

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).